# A CASE

IN THE

# SUPREME COURT OF ILLINOIS.

---

## THIRD GRAND DIVISION.

### APRIL TERM, 1864.

---

SAMUEL EYSTER

*v.*

ELIAS C. HATHEWAY *et al.*\*

1. PARTIES—*in chancery*.  Where a mortgage was executed by husband and wife, purporting to release, on the part of both, the right to a homestead in the mortgaged premises, and it is sought by bill in chancery to avoid such release, in the right of the wife, on the ground that the purport of the instrument in that regard was not made known to her at the time she executed and acknowledged the same, and that she was ignorant of the fact that thereby she was releasing all her right to homestead in such premises, the wife should join in the bill as a party complainant—it cannot be filed by the husband alone.

---

\* The papers in this case were lost, so that it could not be reported in its proper place.

2. CERTIFICATE' OF ACKNOWLEDGMENT—*for what it may be questioned, and in what mode.* A certificate of acknowledgment to a deed may be impeached for fraud, as, where a husband and wife joined in the execution of a mortgage, and there was fraud, duress or undue influence of the husband in procuring the release of the wife of her homestead right, the certificate of acknowledgment it seems may be impeached in that regard.*

3. This may be done upon bill filed for that purpose by husband and wife, or, in a suit to foreclose the mortgage, it may perhaps be set up as a defense.

4. HOMESTEAD—*purchase money.* The statute declaring that the homestead right shall not be claimed against a debt due for the purchase money of the premises, has reference to a debt created in the purchase of the land, and does not embrace a debt created by borrowing money from a third person, which may have been applied by the borrower in the purchase of the land—that provision of the statute applies only to parties who stand in the relation of vendor and purchaser, or those representing them.

APPEAL from the Circuit Court of La Salle county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was a bill in chancery, filed by Samuel Eyster, in the Circuit Court of LaSalle county, on the 5th day of August, A. D. 1862, alleging, in substance, that Eyster, being seized in fee simple of that part of out-lot 34, in the subdivision of the south-west fractional quarter of section No. 11, in township 33, north range 3 east of the 3d p. m., which lies between Main street and Webster street in the city of Ottawa, in La-Salle county, did, on December 5th, 1860, together with his wife, Sarah Eyster, sign what purported to be a mortgage deed of that date, purporting to convey said premises to Joseph C. Hatheway, to secure payment of a certain promissory note described therein, for the sum of $889.18, given by Eyster to Joseph C. Hatheway, of even date with the mortgage, and due and payable six months after the date thereof.

That on December 6th, 1860, Joseph C. Hatheway pretended to assign the note and mortgage to Elias C. Hatheway; but that there was no valid consideration for such assignment;

* See also, *Hill* v. *Bacon,* 43 Ill. 477. But a merely defective certificate of acknowledgment cannot be aided by parol. *Ennor* v *Thompson,* 46 Ill. 221.

that it was done to defeat any plea of usury that Eyster might thereafter interpose to the payment of the note.

That before the execution of this note and mortgage, on January 26th, 1859, Eyster and his wife executed and delivered to Joseph C. Hatheway, a certain trust deed upon the premises above described, to secure the payment of the sum of $600, which sum was borrowed by Eyster from Joseph C. Hatheway, and for which he gave his note described in the trust deed.

That on December 5th, 1860, more than fifty days before the note matured, which was secured by the deed of trust, Joseph C. Hatheway, without any solicitation on the part of Eyster, applied to have a new mortgage executed upon the premises, pretending that he desired to give Eyster more time, but for the real purpose, as charged in the bill, to obtain from Eyster and his wife a specific relinquishment of her right to said premises by virtue of the homestead exemption laws of this State, there being no such release or waiver in the trust deed.

Accordingly, the note and mortgage in controversy were executed, and were taken by Joseph C. Hatheway in lieu of the note and trust deed.

The bill also alleges, that Sarah Eyster in no way released her homestead right in the premises described in the mortgage deed, although such right may appear to be released by the terms of the mortgage and the certificate of acknowledgment.

That the officer who wrote the certificate of acknowledgment, did not ask Sarah Eyster, at the time she signed the mortgage deed, or at any other time, whether she voluntarily relinquished her homestead right to said premises, nor did he employ words of like meaning.   That he did not say anything at all to her in relation to her homestead rights, at the time she signed the mortgage, or at any other time.   That he did not explain to her her rights under the homestead law, and that, at the time she signed the mortgage, she never intended to relinquish her rights under the homestead law.

The bill asked for an injunction to stay the proceedings until further order of the court, which was granted. On the hearing, the court dissolved the injunction and dismissed the bill. This decree of the court below is assigned for error.

Mr. DWIGHT F. CAMERON, for the appellant.

Messrs. GRAY, AVERY & BUSHNELL, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Complainant has no separate interest in the premises, or right to its occupancy, that will authorize him to file a bill in his own name, to enforce the right of his wife to the benefit of the homestead act. If Mrs. Eyster and himself have a right to claim the premises as a homestead, they should join in exhibiting a bill for its protection. Unless she were before the court, no decree could be rendered affecting her rights in the premises. If the settlement of her right to hold the homestead is sought, she should have been a complainant in the bill. For this reason, the court below committed no error in dismissing the bill.

If a bill were properly framed, alleging fraud, duress or undue influence of the husband in procuring her release of the right of homestead, and the bill were sustained by proof, it would seem that a decree might be rendered cancelling that portion of the deed and certificate that states that she released her right or claim to the premises as a homestead, or if a bill were filed by the holder of the deed of trust, it might, perhaps, be set up as a defense, but a reformation of a deed could not be had in such a suit, except by a cross-bill. It is a familiar maxim of the law, that fraud avoids all transactions, even records themselves. Then, if a record may be impeached for fraud, no reason is perceived why the certificate of acknowledgment to a deed may not for the same reason. It was so

held in *Souden* v. *Blythe*, 16 Penn. R. 532 ; *Shroder* v. *Jameson*, 3 Wheat. 457 ; *Swift* v. *Cassell*, 23 Ill. 242. And inasmuch as a deed may be avoided for duress, the same would seem to be true if an acknowledgment of a deed were procured by that means.

It was insisted that the money to secure which this deed of trust was given, was purchase money, and the premises, in any event, are liable to be sold for its satisfaction. If it were established that the money borrowed by appellant from appellee, was paid to Redick for the land, still it does not follow that it was purchase money. It appears that the premises were purchased of Redick, and the money for which this debt was incurred was paid on the last instalment due on the purchase. The statute, in declaring that the homestead right should not be claimed against a debt due for the purchase money, obviously used the language in its ordinary and popular signification. All persons understand the term purchase money to mean the price agreed to be paid for the land, or the debt created by the purchase. It is not understood to mean a debt due another person than the vendor. In this case, the debt was created for money loaned, and not for land purchased. Appellee sold no land to appellant, but he loaned him money. It could not matter, in this indebtedness, whether the money was subsequently paid for the same or other property. There is nothing in the case which shows the relation of vendor and vendee between these parties, and this provision of the statute only applies to parties occupying that relation, or those representing them, and for a debt created by the purchase of the homestead.

The decree is affirmed.

*Decree affirmed.*