Dreese v. Myers.

---

## ANNA DREESE v. WILLIS A. MYERS.

1. NEW TRIAL—*Motion not Necessary.* A motion for a new trial is not necessary to a review of proceedings had upon a motion to set aside a sale of real property.

2. HOMESTEAD—*Exemption—Purchase-Money Improvements.* The provision that the homestead shall not be exempt from the payment of a debt contracted for the purchase of the premises or for the erection of improvements thereon will not include a debt created by borrowing money from a third person, where there is no specific agreement or understanding that the money so borrowed is to be used in the purchase of the homestead or the erection of improvements thereon.

*Error from Ellis District Court.*

ACTION by *Willis A. Myers* against *Anna Dreese* for the foreclosure of a mortgage. At the May term, 1889, plaintiff had judgment, and, from an order refusing to set aside the sale thereon, defendant brings error.

*A. D. Gilkeson*, for plaintiff in error:

The testimony in this case shows that the plaintiff in error was, at the time of making this mortgage, and for a long time prior thereto, in the open and notorious possession of this property as a homestead, with the family consisting of five children, and her husband had been a resident with her of this city. Her possession, then, was notice to the world of her interest and tenure. *Davies v. Cole*, 28 Kas. 260; *Moore v. Reaves*, 15 id. 150; *Tarrant v. Swain*, 15 id. 146.

And it was the duty of the mortgagee to ascertain how this land was held, whether as a homestead or not, and, if it was, it is equally his duty to obtain the joint consent to the mortgagor. *Thimes v. Stumpff*, 33 Kas. 53.

It is true that the defendant in error claims that she said she was a widow, but he could not give the conversation, and the mortgage does not recite any such statement, which, to say the least, is very peculiar. This money was not borrowed or loaned to pay any existing lien, and there is no proof of any lien being in existence on this property, for improvements or taxes, or of any kind. The money paid to witness Haverman was upon an open account, and some of it was paid prior to the borrowing of the money, to wit, September 14, 1886. The amount paid to Hall, for all the record discloses, was also paid on an open account. Nor was it borrowed for the payment of an obligation contracted for the purchase of said premises. These propositions being true, the court had no power to declare the indebtedness a lien upon the homestead. The constitution declares and prescribes the manner of the creation of a lien on a homestead, and it must be

strictly followed. *Jenkins v. Simmons*, 37 Kas. 496. Neither can the good faith of the mortgagee cut any figure in determining the validity of the mortgage. *Anderson v. Anderson*, 9 Kas. 112; *Helm v. Helm*, 11 id. 19.

A judgment rendered against the husband alone is not a lien upon the homestead. *Morris v. Ward*, 5 Kas. 239; *Wheat v. Burgess*, 21 id. 407. And in the case at bar the record shows that the wife alone was a party to this judgment.

*Wm. L. Aaron*, for defendant in error:

The plaintiff in error never filed a motion for a new trial, nor gave the court an opportunity to review its own judgment, and, we insist, is not in a position to ask this court to review this case. This was a trial of a question of fact, the same as if it had been heard by a jury, and we cannot conceive how the supreme court will ignore this essential step. *City of McPherson v. Manning*, 43 Kas. 129; *Crawford v. Gulf Rld. Co.*, 45 id. 475; *Roper v. Ferris*, 48 id. 583.

The court below found "that the money loaned by plaintiff to defendant was used by defendant to pay the purchase price of said real estate, and to pay for the materials for the improvements upon the same, and that the said money was used to discharge said indebtedness and the liens existing thereby." This finding will not be disturbed. *Luke v. Johnnycake*, 9 Kas. 511; *Forbes v. Higginbotham*, 44 id. 94; Const., art. 15, § 9; *Tyler v. Johnson*, 47 Kas. 410.

The fact that Myers accepted the deed signed by her alone, paid her and her creditors the money, shows he relied on her statement that she was a widow; besides, her husband, if she had any, and we have no competent proof of this, had been gone seven years, and they were strangers, all point to the statement made by Anna Dreese that she was a widow and that Myers believed it. Then plaintiff in error is estopped from saying now that she is married, for these are the privies and original parties to the contract, and Michael Dreese is not claiming anything in this suit as husband of Anna Dreese. Either she was wrong then, or is wrong now. She is estopped

by her fraudulent statement *in pais* and by her covenant in the mortgage. 1 Greenl. Ev., §§ 22–24, 207–211; Jones, Mort., §§ 631, 682, 683, 1484; 2 Pars. Cont., p. 791, *et seq.; McAlpine v. Powell*, 44 Kas. 411; *Pearson v. Hardin*, 54 N. W. Rep. 904; 12 Cent. Law. J. 29, and cases cited.

The opinion of the court was delivered by

JOHNSTON, J.: This proceeding was brought to review the ruling of the district court refusing to set aside a sale of real estate which had been made in pursuance of an order of that court. The order was made in an action brought to recover upon an indebtedness of $200 due from Anna Dreese to Willis A. Myers, and to foreclose a mortgage given to secure the payment of the indebtedness. Personal service was made upon the defendant, Mrs. Dreese, but she filed no answer and made no defense. On May 12, 1888, judgment was rendered for the amount, and for a foreclosure of the mortgage; but no execution of the judgment was attempted until March, 1890, when the order of sale mentioned was issued. After appraisement and due notice, a sale of the property — which was a lot in Hays City — was made on April 26, 1889, for more than two-thirds of the appraised value. On the same day, Mrs. Dreese filed her motion to set aside the sale, the principal ground of which was, that the property was a homestead at the time the mortgage was given and foreclosed, occupied by herself and her family, consisting of five children; that she was a married woman, and her husband was still living; and that, as the mortgage was not signed by him, and he was not made a party to the action, nor given notice of its pendency, the mortgage was absolutely void, and a sale of the property under it was unwarranted and illegal.

The testimony offered on the hearing showed that the house and lot on which the mortgage was given had been occupied as a homestead by herself and family since before the execution of the mortgage, and that her husband, who was living, had not signed the mortgage or otherwise given his consent to its execution. It appears to have been conceded on the

9 — 52 KAS.

hearing that there was not that joint consent in the execution of the mortgage necessary to make it valid, but it seems to have been contended that the debt which the mortgage was given to secure arose upon obligations for the purchase price of the lot sold, and for the erection of improvements thereon. The court found "that the money loaned by the plaintiff to defendant was used by defendant to pay the purchase price of said real estate, and to pay for materials for the improvements upon the same, and that the said money was used to discharge said indebtedness and the liens existing thereon." For this reason Mrs. Dreese's motion was denied, and the sale theretofore made confirmed. The testimony, however, fails to sustain the finding of the court.

The claim of Myers that no review can be had because no motion for a new trial was made is not good, for the reason that, upon a hearing of a motion after judgment, a motion for a new trial is not essential to a review. It appears that some of the money borrowed from Myers was used by Mrs. Dreese to pay a balance due upon the lot, and another part was used to pay for lumber previously purchased from another, which had been used in making improvements upon the lot. Neither of these debts, however, was due to Myers, and neither of them constituted a lien against the house and lot. Some time prior to the execution of the mortgage, she purchased and obtained the title to the lot from Martin Allen. There was a balance due Allen upon the lot of $30, and this amount, together with a little interest thereon, was paid by her out of the $200 borrowed from Myers. She had previously purchased a bill of lumber from one Haverman, on which there was a balance due of about $40, and out of the money borrowed she paid him the sum of $32.25. No other claims due for the purchase price of the lot, or for the erection of improvements thereon, are shown to have been paid out of the money borrowed from Myers. If both of these sums had been properly chargeable against the property, or, rather, if it had not been exempt from the payment of both of these, they would still be insufficient in amount to equal the debt

for which the property was ordered to be sold. As to the claim for lumber, it appears that Haverman had not attempted to secure a lien upon the property, nor had he attempted to transfer his claim to Myers. Mrs. Dreese did not owe Myers for the lumber, and the fact that a portion of the money borrowed from him was used to pay the open lumber account of Haverman did not make the borrowed money an obligation or liability incurred for the improvement of the homestead. As between Haverman and Mrs. Dreese, it might have been treated as a liability contracted for the improvement of the homestead, and a judgment upon his claim for lumber and material furnished in favor of Haverman would have constituted a lien upon the homestead. (*Tyler v. Johnson*, 47 Kas. 410.) But as between Myers and Mrs. Dreese, it can only be regarded as money borrowed to pay a preëxisting indebtedness. It does not appear that the money was borrowed from Myers with the agreement that any portion of it was to be used to pay Haverman. The lumber was rather purchased on the personal credit of Mrs. Dreese, and the borrowed money appears to have been loaned by Myers upon the supposed security of the invalid mortgage. The distinction between a liability for purchase money or improvements and money borrowed upon other security, which is subsequently used to pay the purchase money or for improvements, is pointed out in *Eyster v. Hathaway*, 50 Ill. 522; 19 Am. & Eng. Encyc. of Law, 573; Waples, Homest. & Ex. 341. In respect to the indebtedness to Allen for the balance of the purchase price of the lot, some testimony was offered that the money was loaned by Myers with the understanding and agreement between all parties that a portion of it should be used to pay the balance due upon the lot. If the purchase of the lot and the loaning of the money, with the agreement that it should be used to pay for the lot, can all be taken together and regarded as a single transaction, so as to bring it within *Nichols v. Overacker*, 16 Kas. 54, then the property in question would not be exempt from liability for the payment of that much of the judgment; or, if the testimony shows that there was such an agreement and under-

standing between all the parties concerned as would subrogate Myers to the rights of Allen, the exemption might then be held inapplicable to that portion of the debt. The testimony upon this branch of the case is not very clear or satisfactory; but in any event the order of the court must be reversed, as the property was ordered to be sold for debts not enforceable against it.

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.