MARÍA VÁZQUEZ Y TORO, Plaintiff and Appellant, *v.* JUAN FONT ET AL., Defendants and Appellees.

No. 7373. Argued December 23, 1937.—Decided May 31, 1938.

*Ramón A. Gadea Picó* for appellant.   *Leopoldo Tormes García* for appellees.

Mr. Justice Hutchison delivered the opinion of the court.

This is an action to recover an estate of homestead sold under execution to satisfy a money judgment. Defendants

set up, as a special defense, that the property claimed as a homestead had been purchased with borrowed money obtained from a predecessor in interest of defendants. The only evidence offered in support of this averment was a deed of conveyance and a mortgage embodied in one notarial instrument. This instrument was executed April 11, 1919. The parties stated that the vendor, Federico Toro y Pérez had acquired the property described in the instrument from Maximiliano Chardón by a deed executed in 1916.

The first clause of the instrument of 1919 is entitled "Purchase and Sale." By its terms Federico Toro Pérez, for a consideration of $500—said to have been delivered by the purchaser in the presence of the notary and of the witnesses—reconveyed to Maximiliano Chardón the property acquired from him in 1916. The second and third clauses are grouped under the title "Mortgage." The second clause recites that the mortgagee, Petra Geli Collazo, delivered to Chardón in the presence of the notary and of the witnesses $650 as a loan. Chardón agreed to discharge his obligation in a single payment April 11, 1920, with interest at 1 per cent a month, payable monthly. By the terms of the third clause Chardón with the consent of his wife, Juana María Vázquez, executed a mortgage to secure the payment of the $650 with interest to the amount of $50 and an additional sum of $100 to cover costs, disbursements, and attorney's fees in the event of litigation.

The property purchased from Chardón by Toro Pérez, reconveyed by him to Chardón, and mortgaged by Chardón is described as follows:

"Parcel of land located in the ward of Canas, of this city, to the west of the farm 'Perseverancia', containing 5.7 'cuerdas,' that is, two hectares, twenty-seven ares and fifty-seven centiares, of plain land, including a one story frame dwelling, with a zinc roof; another house made of the same materials for a foreman (*mayordomo*) and two wooden, zinc-roofed huts, used as a carriage house and as a stable; bounded on the north by the Pastillo river; on the south by

Don Julio Chardón; on the east by the Peñuelas road, and on the west by the same Pastillo river. This farm is free from liens."

The district judge found that Chardón had paid for the property out of the proceeds of the mortgage. He based his finding on the fact that the amount of the purchase price was less than the amount of the loan, and on subdivisions 20 and 27·of section 101 (*sic*) of the Law of Evidence. Section 101 of the Law of Evidence has only seven subdivisions. Among the disputable presumptions established by section 102 are the following:

"20. That the ordinary course of business has been followed.

"27. That things have happened according to the ordinary course of nature and the ordinary habits of life."

We shall not stop to question the relevancy of these presumptions. It is not enough to say that the purchase price was paid out of the proceeds of the mortgage. Section 1 of the Homestead Law (now section 541 of the Civil Code, 1930 edition) exempts the homestead "from attachment, judgment, levy or execution, except for the taxes due thereon, or purchase price of said property . . ." This law came to us with slight modifications from Illinois. Ordinarily, a statute when it has been adopted by the legislature of a territory or state from another territory or state, should be presumed to have been adopted with the construction as previously placed upon it by the courts of the territory or state where it originated. In *Eyster* v. *Hatheway* (1864) 50 Ill. 521, 99 Am. Dec. 537, the Supreme Court of Illinois said:

". . . The statute, in declaring that the homestead right should not be claimed against a debt due for the purchase money, obviously used the language in its ordinary and popular signification. All persons understand the term purchase money to mean the price agreed to be paid for the land, or the debt created by the purchase. It is not understood to mean a debt due another person than the vendor. In this case, the debt was created for money loaned, and not for land purchased. Appellee sold no land to appellant, but he loaned him money. It could not matter, in this indebtedness,

whether the money was subsequently paid for the same or other property. There is nothing in the case which shows the relation of vendor and vendee between these parties, and this provision of the statute only applies to parties occupying that relation, or those representing them, and for a debt created by the purchase of the homestead.''

In a note to *Mertz* v. *Berry*, 45 Am. St. Rep. 386, we find:

''. . . In *Eyster* v. *Hatheway*, 50 Ill. 525, 99 Am. Dec. 537, it was held, in effect, that homestead purchase money means the price agreed to be paid for the land to the vendor, and not a debt due another generally; therefore, if money is borrowed of a third person, without specifying the purpose for which it is obtained, and is afterward applied by the borrower to the payment of the purchase money due for the homestead, such third party does not stand in the place of the vendor, and is not entitled to his lien, and this ruling has been followed in *Parrot* v. *Kimpf*, 102 Ill. 423; *Winslow* v. *Noble*, 101 Ill. 194. On the other hand, it has been repeatedly decided in Illinois that, if the borrowed money is paid by such third person directly to the vendor for the vendee as the price of the land, it is purchase money, for which the lender has a lien against the homestead: *Austin* v. *Underwood*, 37 Ill. 438; 87 Am. Dec. 254. Or, if the purchase money is advanced by a third person to pay for a homestead in the possession of the vendee, under his promise to secure its repayment out of the land, it is purchase money for which such person has a lien as against the homestead right: *Magee* v. *Magee*, 51 Ill. 500; 99 Am. Dec. 571, and note 574–576, on vendor's liens against homesteads for purchase money.''

After pointing out that a majority of the cases in other jurisdictions maintain what is characterized as a ''more equitable rule,'' the note concludes as follows:

''. . . Perhaps the best rule to follow is that adopted in *Dreese* v. *Myers*, 52 Kan. 126; 39 Am. St. Rep. 336; and in *Carey* v. *Boyle*, 53 Wis. 574. In the last named case the court, in laying down such rule, said: 'It must be understood that the extension of this equity (the lien of the vendor) to a third person is strictly confined to those who furnish or advance the purchase money to the purchaser in such manner that they can be said either to have paid it to the vendor personally, or caused it to be paid on behalf or for the benefit.

of the purchaser, and to this extent they become parties to the transaction. It must not be a general loan, to be used by the purchaser to pay the consideration of the purchase, or to be used for any other purpose at his pleasure. In such case the simple fact that the money can be traced into the land as having been paid by the purchaser to the vendor, as the whole or part of the purchase money, gives the person who loaned it no such right.' To this rule might be added the fact that if money is borrowed of a third person under an express agreement that it is to be used in the purchase of the homestead, or to pay the price thereof and it is so used, it becomes purchase money, and the party so advancing it is entitled to be subrogated to the rights of the vendor, and may enforce the lien against the homestead against the objection of the owner of the land: *Dreese* v. *Myers,* 52 Kan. 126; 39 Am. St. Rep. 336; *Nichols* v. *Overacker,* 16 Kan. 54; *Magee* v. *Magee,* 51 Ill. 500; 99 Am. Dec. 571; *Warhmund* v. *Merritt,* 60 Tex. 24.''

Such considerations furnish no satisfactory reason for a refusal to follow the Illinois courts.

██ In the instant case, the money was not paid by the mortgagee directly to the vendor, either on behalf of the mortgagor or otherwise. There is no pretense that the loan was made for the express purpose of enabling the borrower to purchase the property which was to be mortgaged as security for the loan, or that the loan was made for any specific purpose. Section 1163 of the Civil Code (1930 ed.) may have some bearing on the question of subrogation. It follows:

''The subrogation of a third person in the rights of a creditor can not be presumed, except in the cases expressly mentioned in this Code.

''In other cases it shall be necessary to prove it clearly in order that it may be effective.''

Section 3 of the Homestead Law (section 543 of the Civil Code, 1930 edition) reads as follows:

''No release, waiver or conveyance of an estate so exempted shall be valid unless so expressly provided in the instrument of conveyance by such householder, his wife or her husband, if he or she

have one, or unless possession is obtained or given up pursuant to the conveyance, or without the orders of the district court directing the release thereof whenever the exemption is continued to a child or children.''

There is nothing to show that the deed from Chardón to Toro Pérez in 1916 contained any express conveyance of the homestead estate. No possession was "obtained or given up pursuant to the conveyance.'' Chardón and his family had occupied the premises as a homestead for some seven years prior to execution of the deed from Chardón to Toro Pérez. They continued to occupy the premises as a homestead up to the time of the reconveyance by Toro Pérez in 1919, and thereafter up to the time of Chardón's death in 1928. After the death of Chardón, his widow, now plaintiff herein, with her children continued to occupy the premises as a homestead and apparently was still in possession at the time of the trial in the district court.

Chardón never parted with his title to the homestead estate. The homestead was not included in the conveyance to Toro Pérez. Hence it was not repurchased from Toro Pérez in 1919. No part of the purchase price paid to Toro Pérez was paid as the purchase price of a homestead. The homestead estate was not subject to any vendor's lien by subrogation or otherwise because there was no vendor of the homestead estate. The case does not come within the exception to the homestead exemption created by section 1 of the Homestead Law because there was no "purchase price" within the meaning of the term as used in that section.

Plaintiff alleged that the dwelling house and land as a whole were not worth more than $500. Defendants in their answer alleged that the property was worth $1,800. Testimony for plaintiff tended to show that the entire property was not worth more than $450. The testimony for defendants tended to show that the house was worth $200 or $250 and the land approximately $200 a *cuerda,* making a total

of something over $1,000. The finding of the district judge was in favor of defendants. In this we find no manifest error.

Since the judgment of dismissal must be reversed, the question arises whether this court should dispose of the case or should remand it for further proceedings in the district court. In this connection a question arises as to whether the dwelling house and a part of the land, not to exceed a total appraised value of $500, should first be set apart as a homestead. See *Dávila* v. *Sotomayor*, 36 P.R.R. 701. Whether this be done or not, other questions may and probably will arise as to what the final judgment should be. These are questions which should be determined in the first instance by the district court after a hearing, unless the parties by coming to some agreement are able to avoid the expense of further litigation.

The judgment appealed from must be reversed and the case will be remanded for further proceedings not inconsistent herewith.