María Vázquez y Toro, demandante y apelante, *v.* Juan Font y Jesús, y María Geli Collazo, demandados y apelados.

Núm. 7373.—*Sometido:* Diciembre 23, 1937. *Resuelto:* Mayo 31, 1938.

*Ramón A. Gadea Picó,* abogado de la apelante; *Leopoldo Tormes García,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Éste es un pleito para recobrar un hogar seguro vendido en pública subasta para satisfacer una sentencia en cobro de dinero. Los demandados adujeron como defensa especial que la finca reclamada como hogar seguro había sido adquirida con dinero tomado a préstamo a un predecesor de los demandados. La única prueba ofrecida en apoyo de esta contención fué una escritura de compraventa e hipoteca voluntaria. Ese documento fué otorgado el 11 de abril de 1919. Los comparecientes hicieron constar que el vendedor, Federico Toro y Pérez había adquirido la finca en cuestión de Maximiliano Chardón por escritura otorgada en 1916.

La primera cláusula del documento de 1919 se intitula "compraventa". De conformidad con los términos de la misma Federico Toro y Pérez vendió a Maximiliano Chardón, por el precio de $500—que se decía el comprador entregaba en presencia del notario y de los testigos—la finca adquirida de éste en 1916. Las cláusulas segunda y tercera están agrupadas bajo el título de "hipoteca". La cláusula segunda dice que la acreedora hipotecaria Petra Geli Collazo entregaba en calidad de préstamo y Chardón recibía en presencia del notario y de los testigos la cantidad de $650. Chardón se compro-

metía a devolverle dicha suma en una sola partida, el 11 de abril de 1920, con intereses al uno por ciento mensual, pagaderos por meses vencidos. De acuerdo con los términos de la cláusula tercera, Chardón, con el consentimiento de su esposa Juana María Vázquez, constituyó hipoteca para garantizar el pago de los $650, más $50 para intereses y $100 adicionales para costas, gastos y honorarios de abogado, en caso de litigio.

La finca adquirida de Chardón por Toro Pérez, vendida por éste de nuevo a Chardón e hipotecada por Chardón, se describe del modo siguiente:

"Parcela de terreno radicada en el barrio de Canas de esta ciudad, al Oeste de la finca nombrada Perseverancia, teniendo de cabida cinco cuerdas setenta y nueve céntimos, o sean dos hectáreas, veintisiete áreas y cincuenta y siete centiáreas, de terreno llano, conteniendo una casa de vivienda, de madera, de una sola planta, techada de zinc; otra de los mismos materiales para mayordomo y dos ranchones de madera y techo de zinc, destinados a cochera y pesebre; colindando al norte con el río Pastillo; al sur con don Julio Chardón; al este con la carretera de Peñuelas y al oeste con el mismo río Pastillo. Esta finca se halla libre de cargas."

El juez de distrito resolvió que Chardón había pagado el precio de la finca del producto de la hipoteca. Basó su resolución en el hecho de que el importe de la compraventa era menor que el del préstamo, y en los incisos 20 y 27 del artículo 101 (*sic*) de la Ley de Evidencia. El artículo 101 de la Ley de Evidencia tan sólo tiene siete incisos. Entre las presunciones disputables establecidas por el artículo 102 hallamos las siguientes:

"20.—Que se ha seguido el curso ordinario de los negocios.
".       .       .       .       .       .       .       .       .

"27.—Que las cosas han ocurrido de acuerdo con el proceso ordinario de la naturaleza y los hábitos ordinarios de la vida."

No nos detendremos a considerar la pertinencia de estas presunciones. No basta decir que el precio de la compraventa fué pagado del producto de la hipoteca. La sección

1 de la Ley de Hogar Seguro (en la actualidad artículo 541 del Código Civil, edición 1930) exime el hogar seguro de "embargo, sentencia, exacción o ejecución, excepción hecha de las contribuciones que adeudare, el valor de la compra de dicha propiedad. . ." Esta ley nos ha venido del Estado de Illinois, con ligeras modificaciones. De ordinario cuando un estatuto ha sido adoptado por la Asamblea Legislativa de un territorio o estado, de otro territorio o estado, debe presumirse que ha sido adoptado con la interpretación previamente dádale por las cortes del territorio o estado donde se originó. En *Eyster* v. *Hatheway* (1864), 50 Ill. 521, 99 Am. Dec. 537, la Corte Suprema de Illinois dijo:

"Al declarar el estatuto que el derecho de hogar seguro no estará exento de una deuda por el valor de la compraventa, evidentemente usó las palabras en su sentido corriente y popular. Todo el mundo sabe que con el valor de la compra se quiere decir el precio que se ha convenido pagar por el terreno, o la deuda creada por la compraventa. Con ello no se significa una deuda a otra persona que aquélla de quien se hubo la finca. En este caso la deuda surgió con motivo de un préstamo y no por razón de la finca comprada. El apelado no vendió ningunos terrenos al apelante, sino que le prestó dinero. No importa, en lo que a esta deuda se refiere, que el dinero fuera más tarde pagado por la misma propiedad o por otra. Nada hay en el caso que demuestre la relación de vendedor y comprador entre las partes, y este precepto del estatuto es aplicable tan sólo a aquellas personas que se encuentren en esa relación, o a los que les représenten, y a una deuda creada por la compraventa de la finca objeto del hogar seguro."

En una nota al caso de *Mertz* v. *Berry*, 45 Am. St. Rep. 379, 386, hallamos lo siguiente:

"En *Eyster* v. *Hatheway*, 50 Ill. 525, 99 Am. Dec. 537, se resolvió en efecto que el valor de la compra de la propiedad objeto del hogar seguro, significa el precio que el comprador conviene pagar por la finca al vendedor, y no una deuda general contraída con otro; por tanto, si se toma dinero prestado a un tercero, sin especificar el objeto para el cual se obtiene, y el prestatario aplica más tarde ese dinero al pago del precio de la finca objeto del hogar seguro, ese tercero no se sitúa en el lugar del vendedor y no tiene derecho a gra-

vamen alguno, y esta decisión ha sido seguida en *Parrott* v. *Kimpf,* 102 Ill. 423; *Winslow* v. *Noble,* 101 Ill. 194. Por otra parte, se ha decidido repetidamente en el Estado de Illinois que si el dinero tomado a préstamo es pagado por la tercera persona directamente al vendedor a nombre del comprador, como precio del terreno, ese dinero equivale al valor de la compra de dicha propiedad, y por él el prestamista tiene un gravamen contra el hogar seguro: *Austin* v. *Underwood,* 37 Ill. 438; 87 Am. Dec. 254. O, si el dinero es adelantado por un tercero con el propósito de pagar el precio del hogar seguro y el comprador se obliga a devolverlo del producto de la finca, dicho dinero es el valor de la compra y por él el prestamista tiene un gravamen contra el derecho de hogar seguro: *Magee* v. *Magee,* 51 Ill. 500; 99 Am. Dec. 571, y la nota que aparece a las páginas 574–576 que trata de los gravámenes que tiene el vendedor contra la finca objeto del hogar seguro por el valor de la compra.''

Luego de indicar que la mayoría de los casos en otras jurisdicciones sostienen lo que ha sido caracterizado como una ''regla más equitativa,'' la nota termina así:

''Quizá la mejor regla a seguir es la adoptada en *Dresse* v. *Myers,* 52 Kan. 126; 39 Am. St. Rep. 336; y en *Carey* v. *Boyle,* 53 Wis. 574. En este último caso la corte, al sentar dicha regla, dijo: 'Debe entenderse que la extensión de esta equidad (el gravamen del vendedor) a un tercero está limitada estrictamente a aquéllos que suministran o anticipan el dinero al comprador, de tal forma que podría decirse que lo han pagado al vendedor personalmente, o hecho que el dinero se pague a nombre o en beneficio del adquirente, y hasta este punto ellos se convierten en partes que intervinieron en la transacción. No ha de ser un préstamo general, utilizado por el comprador para pagar el precio de la cosa comprada o para cualquier otro objeto que se le antoje. En tal caso el mero hecho de que el dinero puede identificarse con el terreno como el pagado por el adquirente al vendedor, como parte del precio o en pago total de la compraventa, no otorga tal derecho a la persona que prestó el dinero.' A esta regla podría agregarse el hecho de que si se toma dinero prestado a un tercero a condición expresa de que el mismo será utilizado en la compra de un hogar seguro, o para pagar el precio del mismo, y se le usa para tal fin, el dinero se convierte en el valor de la compraventa (*purchase money*), y la persona que hace el anticipo tiene derecho a que se le subrogue en los derechos del vendedor, y puede exigir su gravamen contra el hogar seguro por sobre la objeción del

dueño del terreno: *Dreese* v. *Myers,* 52 Kan. 126, 39 Am. St. Rep. 336; *Nichols* v. *Overacker,* 16 Kan. 54; *Magee* v. *Magee,* 51 Ill. 500; 99 Am. Dec. 571; *Warhmund* v. *Merritt,* 60 Tex. 24."

Tales consideraciones no presentan razón satisfactoria alguna para que nos neguemos a seguir a las cortes de Illinois.

■■ En el presente caso el dinero no fué pagado por la acreedora hipotecaria directamente al vendedor a nombre del deudor hipotecario ni en ninguna otra forma. No se sostiene que el préstamo fuera hecho con el objeto expreso de poner al prestatario en condiciones de adquirir la finca que debía hipotecarse en garantía del préstamo o que éste fuera hecho para ningún fin específico. El artículo 1163 del Código Civil (ed. 1930) puede tener algo que ver con la cuestión de subrogación. Éste lee así:

"La subrogación de un tercero en los derechos del acreedor no puede presumirse fuera de los casos expresamente mencionados en este código.

"En los demás será preciso establecerla con claridad para que produzca efecto."

El artículo 3 de la Ley de Hogar Seguro (artículo 543 del Código Civil, edición 1930) lee del modo siguiente:

"No será válida ninguna renuncia o traspaso de una finca así exenta, a menos que se consigne expresamente en la escritura de traspaso por dicho jefe de familia, su esposo o esposa, si él o ella lo tuvieren, o a menos que se obtuviere o abandonare la posesión de acuerdo con la escritura de traspaso, o sin la orden de la corte de distrito disponiendo el traspaso del título de la propiedad, siempre que la exención se haga extensiva a un hijo o hijos."

Nada hay que demuestre que la escritura de Chardón a Toro Pérez en 1916 contuviera ningún traspaso expreso de la finca sujeta al hogar seguro. No se "obtuvo o abandonó la posesión de acuerdo con la escritura de traspaso." Chardón y su familia habían ocupado la finca como hogar seguro durante unos siete años anteriores al otorgamiento de la escritura por Chardón a Toro Pérez. Ellos continuaron ocupando la finca como hogar seguro hasta el momento en que Toro

Pérez la traspasó de nuevo en 1919 y luego de esa fecha hasta el momento en que Chardón murió en 1928. Con posterioridad a la muerte de Chardón, su viuda, la aquí demandante, y sus hijos continuaron ocupando la finca como hogar seguro y aparentemente seguían en posesión para la época en que se celebró el juicio en la corte de distrito.

Chardón nunca se desprendió del título que tenía de la finca objeto del hogar seguro. El hogar seguro no fué incluído en la enajenación hecha a Toro Pérez. En su consecuencia, este derecho no fué readquirido de Toro Pérez en 1919. Ninguna parte del precio entregado a Toro Pérez fué pagada como valor de la compra de un hogar seguro. La finca objeto del hogar seguro no estaba sujeta a ningún gravamen en favor del vendedor, ya fuere por subrogación o en alguna otra forma, toda vez que nadie vendió la finca objeto del hogar seguro. El caso no cae dentro de la excepción a la exención del hogar seguro creada por el artículo primero de la ley, puesto que no hubo ''valor de la compra de dicha propiedad,'' dentro del significado de dicha frase, conforme la misma es usada en ese artículo.

La demandante alegó que la casa de vivienda y el solar no valían conjuntamente más de $500. Los demandados en su contestación alegaron que la finca valía $1,800. La prueba de la demandante tendió a demostrar que toda la finca no valía más de $450. La de los demandados tendió a probar que la casa valía $200 ó $250 y el terreno aproximadamente $200 por cuerda, lo que hacía un total de algo más de $1,000. El juez de distrito resolvió la cuestión a favor de los demandados. En ello no hallamos error manifiesto.

Toda vez que la sentencia declarando sin lugar la demanda ha de ser revocada, surge la cuestión de si este tribunal debe resolver el caso directamente o devolverlo a la corte inferior para ulteriores procedimientos. A este respecto surge la cuestión de si la casa y una parte del solar que no exceda del valor de $500 deben ser primeramente separados como un hogar seguro. Véase *Dávila* v. *Sotomayor*, 36 D.P.R. 780.

Ora se haga esto o no, otras cuestiones pueden surgir y probablemente surjan respecto a cuál debe ser la sentencia definitiva. Éstas son cuestiones que deben ser resueltas en primera instancia por la corte de distrito luego de celebrarse una vista, a menos que las partes mediante algún arreglo puedan evitar los gastos de ulteriores litigios.

*La sentencia apelada debe ser revocada y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*