Luis A. Pérez Maldonado y otros, demandantes y recurrentes, *v.* Junta de Relaciones del Trabajo de Puerto Rico, demandada y recurrida.

*Número:* JR-89-363                    *Resuelto:* 12 de marzo de 1993

*Godwin Aldarondo Girald,* abogado de los recurrentes; *Leticia Rodríguez García,* abogada de la recurrida Junta de Relaciones del Trabajo de Puerto Rico; *Rafael Vázquez Colón* y *George E. Green Rodríguez,* de *Domínguez & Totti,* abogados de la Autoridad de Edificios Públicos; *Reinaldo Pérez Ramírez,* abogado de la Unión Independiente de Empleados Profesionales y Clericales de la Autoridad de Edificios Públicos; *Iván Garau Díaz,* abogado del Colegio de Ingenieros y Agrimensores de Puerto Rico, *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos ante nos un asunto novel. Nos toca dilucidar por primera vez el alcance del llamado "procedimiento de clarificación" a través del cual la Junta de Relaciones del Trabajo de Puerto Rico define de modo más preciso y específico cuáles son los empleados que a los fines de la negociación colectiva están incluidos en una unidad apropiada ya existente, para determinar si una plaza o plazas que no estaban incluidas antes deben o no pertenecer a dicha unidad.

# I

El 19 de diciembre de 1978, la Autoridad de Edificios Públicos (Autoridad) y la Unión de Empleados de la Autoridad de Edificios Públicos (Unión) sometieron a la Junta de Relaciones del Trabajo de Puerto Rico (Junta) dos peticiones para determinar unidades apropiadas para negociación colectiva: la P-3370 (relativa a empleados de oficina) y la P-3371 (relativa a empleados profesionales). Esta última fue acompañada de una lista en la cual se detallaron las clasificaciones específicas de los empleados profesionales que se peticionaban en ese momento. La lista no incluía a los ingenieros de la Autoridad clasificados como Ingenieros III en adelante (Ingenieros III, IV y V).

El 12 de febrero de 1979, la Autoridad y la Unión suscribieron un "Acuerdo de Elección por Consentimiento" para las dos unidades ántes aludidas. El 7 de marzo de 1979 se celebró una votación de los empleados profesionales incluidos en la unidad, quienes eligieron a la Unión como su representante. Los ingenieros de la Autoridad clasificados como Ingenieros III en adelante no participaron en esta elección por no estar incluídas sus clasificaciones en dicha unidad.

Años más tarde, el 29 de abril y el 26 de mayo de 1987, la Unión sometió ante la Junta una petición para la clarificación de la unidad apropiada de negociación que ésta representaba en la Autoridad. Mediante esta petición se perseguía incluir a los ingenieros que habían sido omitidos de la unidad apropiada original y que no habían votado en las elecciones de marzo de 1979. El 15 de agosto de 1988, la Jefe de Examinadores de la Junta emitió un informe en el cual recomendó la inclusión de dichos ingenieros en la unidad apropiada. Pasado el período para la presentación de excepciones u objeciones al referido informe, el 8 de febrero de 1989 la Junta emitió una decisión mediante la cual se incluía a los ingenieros clasificados como Ingenieros III en

adelante en la unidad apropiada original. En esta determinación no medió una elección y se realizó la misma a pesar de la oposición afirmativa de los ingenieros aludidos.

El 13 de febrero de 1989 dichos ingenieros sometieron ante la Junta una "Moción de impugnación de procedimiento de clarificación de unidad apropiada".[1] Alegaron que los ingenieros que estaban incluidos en la unidad apropiada eran únicamente los Ingenieros I y II, y que los Ingenieros III, IV y V estaban excluidos de la misma. Además, se alegó que en las elecciones efectuadas para establecer la unidad original no tuvieron participación los ingenieros clasificados como Ingenieros III en adelante, por lo que el procedimiento mediante el cual ahora se les incluía en la unidad no era apropiado. Alegaban, pues, que debieron ser consultados sobre si deseaban o no pertenecer a la Unión.

El 17 de febrero de 1989, la Junta emitió una resolución mediante la cual ordenó a las otras partes concernidas, la Autoridad y la Unión, a someter escritos en los que fijaran su posición en torno a los planteamientos formulados por los ingenieros peticionarios en la referida moción de impugnación. La Autoridad sometió su escrito pero no se opuso a la impugnación. La Unión no sometió su escrito.

El 13 de abril de 1989, la Junta emitió otra resolución en la que declaró sin lugar la moción de impugnación. En esta resolución la Junta admitió que a los peticionarios se les privó del derecho a participar en las elecciones donde se eligió la Unión. También admitió la Junta que la actuación de la Unión se prestaba "para que una unión peticione plazas específicas que en ese momento pueden estar ocupadas por simpatizantes, dejando fuera del proceso otras ocupadas por empleados que también tendrían derecho a votar"

---

[1] La moción de impugnación fue firmada por trece (13) profesionales, doce (12) ingenieros y un agrimensor, de los cuales sólo siete (7) quedaron incluidos en la unidad apropiada por virtud de la decisión de la Junta, y son éstos quienes recurren ante nos.

y cuyo voto podría ser adverso a la Unión. *Exhibit* III, pág. 11. Señaló, además, la Junta en dicha resolución que "[a]nte esta situación, la Junta, de aquí en adelante será más cuidadosa auscultando las unidades apropiadas que se peticionen con clasificaciones específicas *con miras a evitar que en las elecciones que se celebren se queden sin votar empleados que de otra manera tendrían derecho"*. (Énfasis suplido.) Íd.

A pesar de esta admisión indirecta de la propia Junta de que a los peticionarios se les había privado del derecho a votar y a elegir sus representantes, la Junta resolvió que era procedente la presentación de la "Petición de clarificación" por parte de la Unión "toda vez que se solicitaba añadir otras clasificaciones de profesionales en una unidad apropiada que consiste exclusivamente de profesionales". *Exhibit* III, pág. 10. Expresamente resolvió que no procedía una "consulta" y que se podía, de este modo, "expandir una unidad apropiada de profesionales ya existente". Íd.

Los ingenieros peticionarios, entonces, recurrieron ante nos haciendo los señalamientos de error siguientes:

> Erró la Junta al incluir a los peticionarios, mediante el procedimiento de clarificación en la unidad apropiada, en violación del debido procedimiento de ley garantizado por la Constitución de Puerto Rico y de Estados Unidos, ya que nunca se les brindó la oportunidad de ser oídos sobre su deseo o no de pertenecer a la Unión. No se les brindó notificación previa de la solicitud de la Unión para que fuesen incluídos *sin elecciones*, ni oportunidad de emitir un voto secreto sobre su deseo de estar afiliados a esta u otra Unión.
>
> Erró la Junta al privar a los recurrentes de ejercer los derechos garantizados por los Artículos 4 y 5 de la Ley de Relaciones del Trabajo de Puerto Rico.
>
> Erró la Junta al no hacer cumplir la Ley de Relaciones del Trabajo, en cuanto a que la misma requiere que *antes* de certificar a una Unión como representante exclusivo de unos trabajadores, deben efectuarse unas elecciones. (Énfasis en el original.) Recurso de revisión, pág. 4.

Visto el planteamiento de los recurrentes, le dimos tér-

mino a la Junta, a la Autoridad y a la Unión para mostrar causa por la cual no debíamos expedir el auto de revisión solicitado y revocar la decisión de la Junta. Posteriormente, autorizamos la intervención del Colegio de Ingenieros y Agrimensores de Puerto Rico como *amicus curiae*. Todas las partes comparecieron. Pasamos a resolver.

## II

En esencia, tenemos ante nuestra consideración la cuestión de si es lícito que la Junta haya ordenado la inclusión de los recurrentes en la unidad apropiada ya existente en virtud de una petición de clarificación de la Unión y utilizando para ello solamente el llamado "procedimiento de clarificación", sin consultar a los empleados afectados.

Por ser una cuestión privilegiada, consideramos en primer término la contención de la Junta de que no tenemos jurisdicción para considerar este recurso. Aduce la Junta que no hay nada en la Ley de Relaciones del Trabajo de Puerto Rico que disponga como revisable una decisión y orden de clarificación de unidad apropiada.

■ Es cierto que la Ley de Relaciones del Trabajo de Puerto Rico no autoriza expresamente la revisión judicial de las llamadas "decisiones de clarificación de unidad apropiada". *No lo hace por la sencilla razón de que dicha ley no dispone nada sobre tales decisiones ni sobre el llamado "procedimiento de clarificación".* La ley no los considera. En la jurisdicción local, todo lo relacionado a este asunto, tanto las peticiones y el procedimiento, así como las decisiones de clarificación, se ha desarrollado por fíat administrativo, sin que la ley lo establezca directa o expresamente. Sucede especialmente aquí lo que en general acontece con el propio procedimiento de representación, en función del cual ha surgido el llamado procedimiento de clarificación, que la ley "no precisa ni define los factores,

elementos o circunstancias a ser consideradas para la determinación de la existencia de una cuestión relativa a la representación", por lo que la Junta ha procedido a diseñar por su cuenta las normas y criterios correspondientes. D. Fernández y C. Romany, *Derecho Laboral: Casos y Materiales,* Río Piedras, Ed. U.P.R., 1987, T. I, pág. 359. En vista de ello, el argumento de la Junta sobre la ausencia de disposiciones en la ley no tiene sentido. Del vacío legislativo aludido no puede derivarse una limitación a la autoridad de este Tribunal.

■ Aunque la Junta no lo plantea, en *Rivera v. Junta Relaciones del Trabajo,* 70 D.P.R. 5 (1949), en *F.S.E. v. J.R.T.,* 111 D.P.R. 505 (1981), y en *J.R.T. v. A.M.A.,* 119 D.P.R. 94 (1987), reconocimos que la composición de la unidad apropiada es cuestión de la exclusiva jurisdicción de la Junta y que sus determinaciones sobre el particular no han de ser alteradas en ausencia de arbitrariedad, prejuicio, parcialidad o ilegalidad. Pero ello no es determinativo tampoco de la cuestión jurisdiccional que estamos examinando. La limitación que hemos reconocido atañe al alcance de la jurisdicción ordinaria de los tribunales y, como claramente señalamos en *J.R.T. v. Marex Const. Co., Inc.,* 103 D.P.R. 135 (1974), en nada afecta la función exclusiva de este Tribunal de emitir la decisión final sobre cuestiones de derecho. Ello es particularmente cierto en casos como éste donde los peticionarios se amparan en una reclamación de derechos constitucionales cuya dilucidación final nos corresponde exclusivamente. *Santa Aponte v. Srio. del Senado,* 105 D.P.R. 750 (1977); *Peña Clos v. Cartagena Ortiz,* 114 D.P.R. 576 (1983); *Silva v. ,Hernández Agosto,* 118 D.P.R. 45 (1986). Finalmente, debe tenerse en cuenta que no estamos evaluando, en sí, los méritos de la determinación de la Junta sobre la composición de la unidad apropiada en cuestión sino, más bien, el problema de si el llamado "procedimiento de clarificación" es un medio lí-

cito para hacer la determinación en este caso sobre la unidad apropiada para la negociación colectiva. Para ello indudablemente tenemos jurisdicción. Véase *Leedom v. Kyne*, 358 U.S. 184 (1958). Ciertamente aquí no es de aplicación el mecanismo que impera en la jurisdicción federal donde, para obtener la revisión judicial de una decisión de la Junta federal dimanante del procedimiento de representación, es necesario que la parte afectada adversamente cometa una presunta práctica ilícita de trabajo para entonces poder revisar judicialmente la decisión de la Junta, a través de la vía colateral, al dilucidarse judicialmente la comisión de la práctica ilícita. *N.L.R.B. v. Rolligon Corp.*, 702 F.2d 589, 592 (5to Cir. 1983); *N.L.R.B. v. Mississippi Power Co.*, 769 F.2d 276 (5to Cir. 1985); *Luce & Co. v. Junta Relaciones del Trabajo*, 82 D.P.R. 96 (1961). Sobre la aplicabilidad de ese mecanismo en la revisión de las decisiones de la Junta local, véase Fernández y Romany, *op. cit.*, pág. 362.

## III

En la jurisdicción federal, el procedimiento para clarificar la composición de una unidad apropiada ya certificada se introdujo formalmente en 1964. Aunque la Junta federal (N.L.R.B.) había realizado "clarificaciones" de unidades apropiadas ya existentes antes de 1964, no es hasta ese año que formalmente se crea en esa jurisdicción el llamado "procedimiento de clarificación". C.J. Morris, *The Developing Labor Law*, 2da ed., Chicago, ABA, 1983, Vol. II, pág. 1614. En Puerto Rico dicho procedimiento fue informalmente adoptado por la Junta local en 1970, siguiendo en todos sus aspectos la práctica de la Junta federal. El procedimiento de clarificación en Puerto Rico no está contenido en los reglamentos promulgados por la Junta local. No existe siquiera una resolución oficial de la Junta que establezca dicho procedimiento y fije sus alcances. La

Junta nos ha certificado (Certificación de 2 de febrero de 1993) que dicho procedimiento fue "instituído en el año 1970 por el entonces Presidente de la Junta .... *según consta en el Informe Anual 1970–71 de este Organismo"*. (Énfasis suplido.) También nos ha certificado la Junta que "[e]ste procedimiento fue adoptado de la Junta Nacional de Relaciones del Trabajo (102.60 (b)), *que utiliza un proceso similar y con los mismos propósitos"*. (Énfasis suplido.) Certificación de 2 de febrero de 1993. Evidentemente se trata de un calco total del mecanismo federal (tan completo que en Puerto Rico ni siquiera se ha reglamentado el procedimiento local).

El dato mencionado en el párrafo anterior es importante debido al principio de hermenéutica aplicable a este caso. Repetidamente hemos resuelto que cuando en Puerto Rico se implanta una norma o procedimiento tomado de otra jurisdicción, debe presumirse que se adopta aquí también la interpretación y el alcance que tenían en su lugar de origen. *Pueblo v. Reyes Bonilla*, 100 D.P.R. 265 (1971); *Luce & Co. v. Junta Relaciones del Trabajo*, supra, pág. 98 esc. 2; *Jiménez v. Jones*, 74 D.P.R. 260 (1953); *Corretjer v. Tribl. de Distrito*, 72 D.P.R. 754 (1951); *Nieves v. Jones, Jefe Interino Penitenciaría*, 72 D.P.R. 287 (1951); *Padilla v. Vidal*, 71 D.P.R. 517 (1950); *Legarreta v. Tesorero de P.R.*, 55 D.P.R. 22 (1939); *Vázquez v. Font*, 53 D.P.R. 265 (1938); *Díaz v. P.R. Railway, Light & Power Co.*, 21 D.P.R. 78 (1914). Ello es particularmente cierto en situaciones extremas como las de este caso, en el cual el esquema normativo en cuestión no sólo es una copia exacta y *contínua* de la reglamentación federal, sino que, además, por razón de las relaciones existentes entre Puerto Rico y Estados Unidos, las normas federales son preeminentes.[2] Cuando me-

---

[2] Conocida es la amplia facultad del Congreso para reglamentar las relaciones obrero-patronales tanto de Estados Unidos como de Puerto Rico. Nuestra propia legislación y reglamentación prevalece sólo en los espacios jurídicos permitidos o no

nos, hemos reconocido que en los casos donde una de nuestras instituciones normativas derive de determinada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en nuestra jurisdicción. *Peña Clos v. Cartagena Ortiz*, supra.

■ Si se examinan cuidadosamente los precedentes pertinentes en la jurisdicción federal, se encontrará que allá se ha recurrido al procedimiento de clarificación para añadir a una unidad apropiada determinados empleados que al momento de la petición no forman parte de ésta, pero que propiamente debían pertenecer a la misma porque comparten una misma comunidad de intereses. *N.L.R.B. v. Magna Corp.*, 734 F.2d 1057 (5to Cir. 1984); *N.L.R.B. v. D.M.R. Corp.*, 699 F.2d 791 (1983); R.A. Gorman, *Basic Text on Labor Law: Unionization and Collective Bargaining*, Minnesota, Ed. West Publishing Co., 1976, pág. 69. Se trata principalmente de situaciones: (1) donde un patrono expande sus operaciones y abre nuevos empleos en su establecimiento, que son esencialmente similares o parecidos a los que ya estaban incluidos en la unidad apropiada; (2) donde un patrono establece una nueva sucursal de la empresa en la cual hay empleos idénticos a los incluidos en la unidad apropiada; (3) donde unos empleos que antes estaban excluidos de la unidad apropiada han evolucionado sustancialmente con el tiempo adquiriendo características que los hacen muy similares o parecidos a los que componen la unidad; (4) donde una empresa que tenía una unidad apropiada adquiere o se une a otra dedicada al mismo tipo de negocio que tenía su propia unidad pero que desapareció con la fusión, o (5) incluso se ha utilizado en casos extremos como el de *American Te-*

---

ocupados por las normas federales. Véanse, en general: *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517 (1977); *Pantoja v. ESCO Corp.*, 100 D.P.R. 51 (1971); *P.R. Telephone Co. v. J.R.T.*, 92 D.P.R. 257 (1965); *P.R. Telephone v. Junta Rel. Trabajo*, 86 D.P.R. 382 (1962); *Junta Rel. del Trabajo v. I.L.A.*, 73 D.P.R. 616 (1952); *Asoc. Empl. Bayamón Transit v. Junta Rel. Trabajo*, 70 D.P.R. 292 (1949).

*levision and Communications Corp.*, 279 NLRB Dec. 535 (1986), donde un patrono no le había informado a la unión sobre la existencia de una categoría específica de empleos (*salesclerk*), por lo que no se incluyó en la definición de la unidad contratante, pero se permitió añadirla posteriormente mediante clarificación ya que dicha categoría se consideraba parte de una clasificación más general que sí se había incluido inicialmente en la definición de la unidad (*clerical employees*). En tales casos no es menester consultar a las personas que ocupan los empleos en cuestión porque se presume que, como dichos empleos son funcionalmente iguales a los que están incluidos en la unidad contratante, todos los empleados comparten el mismo interés en la representación. *N.L.R.B. v. Mississippi Power Co.*, supra.

■ Por otro lado, la propia Junta federal reiteradamente ha sostenido que el procedimiento de clarificación es *inadecuado* para alterar una unidad que estaba claramente definida en el convenio colectivo y que no incluía empleos que la Unión quiera añadir posteriormente mediante petición de clarificación, si dichos empleos ya existían al momento de definirse la unidad originalmente. *Monongahela Power Company*, 198 NLRB Dec. 1183 (1972); *Wallace-Murray Corp.*, 192 NLRB Dec. 1090 (1971); *The Standard Oil Co.*, 146 NLRB Dec. 1189 (1964). Y se ha resuelto judicialmente por el foro federal que un grupo de empleados no pueden ser añadidos a una unidad existente mediante el procedimiento de clarificación cuando éstos antes habían sido intencional o históricamente excluidos de esa unidad. *N.L.R.B. v. Mississippi Power Co.*, supra. Cuando un grupo de empleados es excluido inicialmente de la unidad contratante, se requiere consultarles antes de poder incluirlos en dicha unidad posteriormente, a fin de salvaguardar su derecho a escoger su representante en la negociación colectiva. *N.L.R.B. v. Mississippi Power Co.*,

984

supra. Véanse, también: *Wallace-Murray Corp.*, supra, y *Massachusetts Teachers Association*, 236 NLRB Dec. 1427 (1978). La petición de clarificación es inadecuada en tales casos. *The Dayton Power and Light Company*, 137 NLRB Dec. 337 (1962); *Yellow Cab, Inc.*, 131 NLRB Dec. 239 (1961).

La postura de la Junta federal sobre este asunto se expresó con meridiana claridad en una decisión suya de hace varios años. En *Copperweld Specialty Steel Company and United Steelworkers of America*, 204 NLRB Dec. 46 (1973), la Unión había sometido una petición de clarificación para incluir a siete grupos de empleados muy diversos entre sí que no habían sido partícipes originalmente en la unidad apropiada, alegando que se habían quedado fuera porque el patrono no les había facilitado la lista de dichos individuos ni las funciones que realizaban al momento en que la elección fue conducida. La Junta federal rechazó la petición de la Unión y expresó lo siguiente:

> A unit clarification may be in order where a new employee classification has been created, or an employer's operations have been expanded subsequent to a certification, and the employees involved are normal *accretions* to the certified unit. *Here, however,* the seven disputed *classifications are not new, since they were in existence at the time of the Board election* which resulted in certification. Furthermore, the Petitioner does not allege that the duties of the employees involved have undergone such change as would be tantamount to the creation of new classifications. In these circumstances, we find that the petition raises a question concerning the representation of the employees in the classifications mentioned above which, *under settled precedent, cannot be resolved in the clarification proceeding.* Thus, *even if the seven classifications were mistakenly excluded from the bargaining unit,* a question we need not decide, we believe that they do not constitute an *accretion* to the existing unit. *The proper procedure for accomplishing Petitioner's purpose in the instant matter is a petition filed pursuant to* Section 9(c) of the Act, *seeking an election,* rather than a petition for unit clarification. Accordingly, we shall dismiss the petition herein. (Énfasis suplido y escolio omitido.) *Cop-*

*perweld Specialty Steel Company and United Steelworkers of America*, supra, pág. 46.

En el caso ante nos, la unidad apropiada fue definida por acuerdo del patrono y de la Unión con suficiente claridad. Estaba constituida de la forma siguiente:

> Todos los empleados profesionales empleados por la Autoridad en las clasificaciones de Bachiller en Arquitectura, Bachiller en Ingeniería, Ingenieros I y II, Contadores I, II y III, Arquitectos I, II y III, Planificador de Proyectos Arquitectónicos I, II y III, Técnicos de Planificación I y II, Programador de Sistemas I y II, Funcionarios Ejecutivos I y II y la Funcionaria Ejecutiva que trabaja en la Sección de Liquidación de Contratos, incluídos los empleados bajo el Programa CETA; excluídos: ejecutivos, supervisores, administradores, empleados íntimamente ligados a la gerencia (closely allied to management), empleados confidenciales, empleados con conflictos de intereses, guardianes, empleados por contrato, empleados irregulares, empleados comprendidos en otras unidades de negociación colectiva y toda otra persona con poderes para emplear, despedir, disciplinar, ascender, o de otra manera variar el status de los empleados o hacer recomendaciones al efecto. Recurso de revisión, pág. 5.

Como puede observarse, los Ingenieros III, IV y V no fueron incluidos en la definición de la unidad apropiada, aunque dichas categorías existían entonces. Su exclusión fue deliberada y respondió a que tanto el patrono como la Unión entendían que dichos empleados tenían *funciones gerenciales.*([3]) Los empleados en cuestión, por estar excluidos de la unidad, no votaron en la elección de 1979 mediante la cual se certificó la Unión. Tampoco fueron incluidos en los convenios colectivos suscritos por la Autoridad y la Unión posteriormente. La propia Junta, en su resolución que ordenaba la inclusión de los recurrentes en la unidad

---

([3]) Así se desprende de los alegatos, no sólo de los recurrentes del Colegio de Ingenieros y de la Autoridad, sino también del de la Unión. De hecho, aun parece haber disputa sobre el carácter de los cargos de los recurrentes que .ocupan la posición de *"gerentes de proyectos"*, según se desprende de los alegatos de la Autoridad de Edificios Públicos y de la Unión de Empleados de la Autoridad de Edificios Públicos.

contratante, reconoce el derecho a votar que le hubiera asistido originalmente a empleados en las clasificaciones aludidas. A la luz de estos hechos y vistas las normas e interpretaciones pertinentes que imperan en la jurisdicción federal, de donde se tomó el procedimiento de clarificación en cuestión, debemos concluir que en este caso el mismo no era el medio adecuado para incluir a los recurrentes en la unidad apropiada. Aún si fuese cierto, como alega la Unión, que los recurrentes, a pesar de ocupar cargos de "gerentes de proyectos", realizan tareas similares a las de otros profesionales incluidos en la unidad apropiada, el claro historial de exclusión de éstos de dicha unidad requiere que se les dé la oportunidad de expresarse en cuanto a si quieren pertenecer a la misma o no.

■ No tiene fundamento el temor expresado por la Junta de que de prevalecer los recurrentes "se llegaría al resultado absurdo de que no podría existir el procedimiento de clarificación ... y tendría que celebrarse una elección cada vez que se quiera añadir o excluir alguna plaza de la unidad apropiada ...". Nada de lo que aquí resolvemos tiene tan drástico alcance. El procedimiento de clarificación es un recurso valioso y la Junta puede continuar usándolo siempre que lo estime conveniente, dentro de los parámetros generales que hemos señalado antes. Lo que no puede hacerse es utilizar dicho procedimiento para menoscabar el derecho de unos trabajadores a participar adecuadamente en la selección de quién los representará en la negociación colectiva, derecho garantizado tanto por leyes federales como de Puerto Rico y fundamento esencial de la paz laboral, y que en nuestro ordenamiento tiene rango constitucional.

Por los fundamentos antes expuestos, *se deja sin efecto la Resolución de la Junta de Relaciones del Trabajo de 13 de abril de 1989. Se devuelve el caso para que se continúen con los procedimientos pertinentes conforme a este pronunciamiento.*