SENTENCIA
El 1 de abril de 2002, el Sr. Ramón Enrique Díaz Arroyo y sus dos hijos, Raisa Alejandra y Ramón Enrique, presentaron una demanda ante el Tribunal de Primera Instancia contra el Hospital Dr. Susoni, Inc. (Hospital o peticionario) para reclamar daños y pexjuicios. La demanda instada se fundamentó en que la esposa del recurrido y madre de sus dos hijos, la Sra. Isaira Rodríguez, fue despedida del Hospital de forma ilegal y discriminatoria, como resultado de su activismo sindical. Se adujo en la demanda que ello les causó daños y angustias mentales, por lo que solicitaban la indemnización correspondiente.
El Hospital contestó la demanda y posteriormente presentó una moción de sentencia sumaria. En ésta planteó, entre otras cosas, que el foro primario carecía de jurisdicción para atender esta controversia, habida cuenta que, al versar la demanda sobre un reclamo de discrimen sindical, la jurisdicción exclusiva era de la Junta Nacional de Relaciones del Trabajo. Se adujo también que la demanda estaba prescrita.
Luego de varios incidentes procesales, el foro primario se negó a dictar sentencia sumariamente a favor del Hospital. El tribunal resolvió que existía una controversia real en cuanto a la prescripción de la causa de acción, por lo que no procedía resolver sumariamente el caso. Rechazó el planteamiento jurisdiccional y concluyó que le correspondía al tribunal dilucidar la reclamación instada al amparo del Art. 1802 del Código Civil, 31 L.RR.A. see. 5141.
Por estar inconforme con tal decisión, el Hospital acudió ante el Tribunal de Apelaciones. En su recurso planteó lo mismo que había expresado en la moción de sentencia su *55 maria, respecto la falta de jurisdicción del foro primario por tratarse de un asunto de discrimen sindical. Específicamente alegó que la ley federal, el Labor Management Relations Act, 1947, según enmendada, 29 U.S.C.A. see. 141 et seq., ocupaba el campo.
El Tribunal de Apelaciones confirmó al foro primario. Adujo, respecto al asunto jurisdiccional, que la jurisprudencia del Tribunal Supremo de Estados Unidos había dispuesto que los derechos de los parientes de los obreros no son un apéndice del contrato laboral ni emanan supletoriamente o de modo alguno de la legislación especial laboral, por lo que no procede acudir a ella para decidir si éstos poseen determinado derecho. Por ello, la ley federal no ocupaba el campo.
Nuevamente inconforme, el Hospital Susoni compareció ante nosotros y señaló el error siguiente:
ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL DETERMINAR QUE LOS TRIBUNALES DE PUERTO RICO POSEEN JURISDICCIÓN SOBRE LA MATERIA ANTE SU CONSIDERACIÓN DE DISCRIMEN SINDICAL, YA QUE ES LA JUNTA NACIONAL DE RELACIONES DEL TRABAJO LA QUE TIENE JURISDICCIÓN EXCLUSIVA PARA EN-TENDER EN CASOS QUE ENVUELVEN UNA PRÁCTICA ILÍCITA DEL TRABAJO, INCLUYENDO CUALQUIER ASUNTO DONDE SE ALEGUE DISCRIMEN SINDICAL; JURISDICCIÓN QUE DE HECHO EJERCIÓ LA JUNTA EN EL CASO DE AUTOS, RESULTANDO EN UN ACUERDO TRANSACCIONAL FINAL Y FIRME. Solicitud de certiorari, pág. 7.
Expedimos el auto solicitado. Las partes han comparecido, por lo que estamos en posición de resolver y pasamos a así hacerlo.
Analizados los planteamientos de las partes, así como la normativa federal aplicable, se dicta sentencia, se revoca al Tribunal de Apelaciones y se desestima la demanda instada.
Así lo pronunció, manda el Tribunal y certifica la Secre *56 taria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión de conformidad, a la cual se le unió el Juez Presidente Señor Hernández Denton. El Juez Asociado Señor Rebollo López concurrió con el resultado. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente. La Juez Asociada Señora Fiol Matta emitió una opinión disidente. El Juez Asociado Señor Rivera Pérez no intervino.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del TribunalSupremo

Opinión de conformidad emitida por la
Juez Asociada Señora Rodríguez Rodríguez, a la cual se le une el Juez Presidente Señor Hernández Denton.
Nos corresponde resolver si los tribunales del Estado Libre Asociado de Puerto Rico tienen jurisdicción para atender una reclamación en daños según el Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, instada por los familiares de una persona que, alegadamente, fue despedida de su empleo a causa de sus actividades sindicales y por lo cual había presentado una reclamación ante la Junta Nacional de Relaciones del Trabajo.
I
La Sra. Isaira Rodríguez trabajaba en el Hospital Dr. Susoni (Hospital) como teenóloga médica desde 1989 hasta su despido el 29 de marzo de 2000. Por entender que su despido se debió principalmente a su participación en actividades sindicales, la señora Rodríguez presentó una querella contra su patrono ante la Junta Nacional de Relaciones del Trabajo (Junta Nacional). Instado el proceso, las partes llegaron a un acuerdo transaccional para finiquitar *57 la controversia.(1) En el acuerdo, el patrono no hizo admisión alguna de que su conducta constituyera un discrimen patronal según el Labor Management Relations Act, 1947 (LMRA), 29 U.S.C.A. sec. 141 et seq. La Junta Nacional avaló el acuerdo sin expresión alguna sobre este aspecto.
El 1 de abril de 2002, el Sr. Ramón Enrique Díaz Arroyo, esposo de la señora Rodríguez, por sí y en representación de sus dos hijos menores de edad (parte recurrida o recurridos), presentó una reclamación en daños y perjuicios al amaparo del Art. 1802 del Código Civil, ante, contra el Hospital. Reclamó, en esencia, por los daños sufridos por él y por sus hijos a causa del “despido injustificado” de la señora Rodríguez.(2) Haciendo referencia a Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998), adujo que nuestro ordenamiento jurídico reconocía una causa de acción a los familiares de un empleado despedido injustificadamente.
En su contestación, el Hospital admitió que la señora Rodríguez trabajó para la institución médica durante el periodo de tiempo descrito en la demanda, sin embargo, negó que su despido obedeciera a razones discriminatorias o que fuese un despido sin causa justificada. Además, rechazó cualquier alegación relacionada con los daños sufridos por los familiares de la empleada despedida. Por último, el Hospital adujo que la reclamación de los familiares de la señora Rodríguez estaba prescrita.(3)
Como defensa afirmativa, el Hospital esgrimió, en lo que nos concierne, que el Tribunal de Primera Instancia carecía de jurisdicción sobre la materia debido a que la Junta Nacional poseía jurisdicción exclusiva en materia de *58 prácticas ilícitas del trabajo, como lo era el discrimen sindical por el cual se reclamaba.
Trascurridos varios eventos procesales, el Hospital solicitó que se dictara sentencia sumaria a su favor. En su moción planteó nuevamente que la causa de acción estaba prescrita y reprodujo su alegación de falta de jurisdicción sobre la materia. Sobre este particular señaló que para prevalecer en la demanda instada, el tribunal estaba obligado a determinar que la señora Rodríguez fue despedida a causa de sus actividades sindicales; es decir, que el Hospital incurrió en un acto de discrimen sindical. Ya que este era un asunto de la exclusiva competencia de la Junta Nacional, señaló que el tribunal de instancia no tenía jurisdicción para dilucidar los méritos del reclamo que pendía ante sí.
Por su parte, los recurridos se opusieron a que se dictara sentencia sumariamente, debido a que existían controversias genuinas sobre hechos materiales que impedían la resolución del litigio de manera sumaria, específicamente, respecto al asunto de la prescripción. Sobre la alegación de falta de jurisdicción sobre la materia, la parte recurrida sostuvo que la Junta Nacional había encontrado “causa probable para entender que el Hospital Dr. Susoni había discriminado con la referida empleada”.(4) Señaló dicha parte que el acuerdo transaccional se dio entre el patrono y la señora Rodríguez, mientras que en la acción quienes solicitaban indemnización por sus propios daños eran el esposo y los hijos de la señora Rodríguez.
Indicaron, expresamente, que el tribunal sólo tendría que evaluar la prueba para “llegar a las conclusiones en cuanto a los p[er]juicios sufridos, por las acciones discriminatorias que [el Art. 1802 prohíbe] ... y sobre si hubo discrimen o no contra la se[ñ]ora Isaira Rodríguez”.(5) Negó específicamente que fuera “necesario determinar si hubo *59 práctica ilícita de trabajo según la ley federal”.(6) Los recurridos alegaron también que en la medida que su reclamo involucraba importantes derechos constitucionales, e.g., expresión, libertad de asociación y “libertad de pertenecer a un sindicato u otra asociación”, la ley federal no ocupaba el campo.(7)
El Tribunal de Primera Instancia dictó una resolución, en la cual se negó a desestimar la demanda instada al resolver que había controversia real sobre hechos materiales respecto la alegación de prescripción que impedían la resolución sumaria del caso. Rechazó el argumento de falta de jurisdicción, levantado por el Hospital, y concluyó que le correspondía al tribunal dilucidar la controversia según el Art. 1802 del Código Civil, supra.
Inconforme, el Hospital recurrió al Tribunal de Apelaciones mediante un recurso de certiorari. El foro apelativo intermedio confirmó la determinación del tribunal de instancia de asumir jurisdicción y resolvió que las leyes federales no ocupaban el campo sobre ese asunto.
En desacuerdo nuevamente, el Hospital recurrió ante este Tribunal. Nos planteó en su recurso de certiorari la comisión del error siguiente:
Erró el Honorable Tribunal de Apelaciones al determinar que los Tribunales de Puerto Rico poseen jurisdicción sobre la materia ante su consideración de discrimen sindical, ya que es la Junta Nacional de Relaciones del Trabajo la que tiene jurisdicción exclusiva para entender en casos que envuelven [sic] una práctica ilícita del trabajo, incluyendo cualquier asunto donde se alegue discrimen sindical; jurisdicción que de hecho ejerció la Junta en el caso de autos resultando en un acuerdo transaccional final y firme. Solicitud de certiorari, pág. 7.
El 20 de septiembre de 2004 expedimos el presente recurso. Contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver la contro *60 versia aquí planteada y procedemos a expresar nuestro criterio al respecto.
II
A. Tenemos ante nuestra consideración una controversia de carácter novel. Debemos resolver si acorde con nuestros dictámenes en Santini v. Serv. Air, Inc., 137 D.P.R. 1 (1994), Maldonado v. Banco Central Corp., 138 D.P.R. 268 (1995), y Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998), en los que reconocimos una causa de acción en daños y perjuicios a los familiares de un empleado que había sido discriminado por su patrono en violación a la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. see. 146 et seq.), o había sido víctima de represalias en violación a la Sec. 21 de la Ley Núm. 96 de 26 de junio de 1953 (29 L.P.R.A. sec. 145a et seq.), es también apropiado reconocer una causa de acción por daños cuando el acto alegadamente discriminatorio se refiere a actividades sindicales del empleado.
El peticionario sostuvo que la respuesta es en la negativa. Como ya indicamos, éste apuntó que, para prevalecer en su causa de acción, los familiares de la empleada tienen que probar que el patrono incurrió en un discrimen sindical y, ya que este es un asunto de la exclusiva competencia de la Junta Nacional, los tribunales del Estado Libre Asociado de Puerto Rico no tienen jurisdicción para atender tal reclamo. El Hospital argüyó que sobre esta materia el campo está ocupado por la legislación federal.
La parte recurrida, por su parte, adujo que no aplicaba la doctrina del campo ocupado, principalmente, a la luz de lo dispuesto por el Tribunal Supremo de Estados Unidos en United Workers v. Laburnum Corp., 347 U.S. 656 (1954). Allí se reconoció una causa de acción por daños y perjuicios contra la unión demandada, al resolverse que el reclamo de *61 daños no había quedado desplazado por la ley federal. Alegó, en su consecuencia, que igual resultado se imponía en este caso.
Trabada así la controversia, pasemos a analizarla.
B. El Congreso de Estados Unidos aprobó la legislación que nos ocupa con el propósito de promover la paz industrial y uniformar la política laboral de Estados Uni-dos, de modo que se promoviera el libre flujo del comercio interestatal. La legislación federal procura proteger y garantizar los derechos de los empleados frente a sus patronos, así como frente a las uniones, y proscribe aquellas prácticas que afecten el comercio interestatal.(8)
A través del National Labor Relations Act (NLRA), 29 U.S.C.A. see. 151 et seq., el Congreso pretendió proteger el derecho de los empleados a organizarse y negociar colectivamente, entre otros derechos. 29 U.S.C.A. see. 157. Secuela de ese reconocimiento, la ley federal prohíbe las prácticas discriminatorias e ilícitas de los patronos, así como de las organizaciones obreras que puedan interferir con las actividades concertadas y los derechos garantizados por el NLRA a los empleados. 29 U.S.C.A. see. 158.
Para implementar y velar por el cumplimiento del mandato establecido en el NLRA, la ley dispuso la creación de la Junta Nacional. 29 U.S.C.A. see. 153. El esquema reglamentario creado permitía uniformar la política laboral que estableciera el Congreso, a través de los pronunciamientos de un foro único como la Junta Nacional. Sears, Roebuck & Co. v. Carpenters, 436 U.S. 180, 191 (1978) (“The interest *62 in uniform development of the new national labor policy required that matters which fell squarely within the regulatory jurisdiction of [the National Labor Relations Board] be evaluated in the first instance by that agency”). Mediante un foro único para atender los reclamos según el NLRA, se evita el peligro de decisiones disgregantes que afecten la uniformidad exigida por el Congreso en materia de política laboral.
El Art. 10(a) del NLRA, 29 U.S.C.A. sec. 160(a), le confirió jurisdicción exclusiva a la Junta Nacional para atender reclamos que se refieran a una práctica ilícita del trabajo, como lo es el discrimen sindical.(9) Ante este mandato, naturalmente, el Tribunal Supremo ha dispuesto que el tema de prácticas ilícitas del patrono es de la exclusiva incumbencia de la Junta Nacional. Véanse: Garner v. Teamsters Union, 346 U.S. 485 (1953); San Diego Unions v. Garmon, 359 U.S. 236 (1959); Belknap, Inc. v. Hale, 463 U.S. 491 (1983).
Lo hemos reconocido así reiteradamente. Vargas v. Molinos Nacionales, Inc., 134 D.P.R. 919 (1993); Pérez Maldonado v. J.R.T., 132 D.P.R. 972 (1993); Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517 (1977). En Vargas, ante, págs. 926-927, indicamos de manera expresa: “[E] 1 discrimen por afiliación sindical, como práctica ilícita del patrono, es una materia de la exclusiva jurisdicción de la Junta Nacional de Relaciones del Trabajo. Corresponde a *63 dicha entidad —en primera instancia— pasar juicio sobre la controversia, y sobre si existe o no una práctica ilícita del trabajo.” (Enfasis suprimido.)
C. Habida cuenta de que el planteamiento de la parte peticionaria es de falta de jurisdicción sobre la materia en virtud de la doctrina de desplazamiento o campo ocupado, se hace necesario que la abordemos en mayor detalle.
La doctrina de desplazamiento en el ámbito laboral se asienta sobre la premisa de que el Congreso tuvo la intención, al aprobar el NLRA, de ocupar el campo en materia de derecho laboral. Es decir, que regular o reglamentar el derecho a afiliarse a una unión o negociar colectivamente, con sus respectivas permutaciones, son asuntos de “alto interés nacional” (peculiarly national concern), que exigen uniformidad en su reglamentación y tratamiento. L.H. Tribe, American Constitutional Law, 2da ed., Nueva York, Ed. Foundation Press, 1988, pág. 500 esc. 22 (“regulation of labor management relations [is among] other examples of [such] peculiarly national concerns ...”). Véanse, además: Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985); A. Cox, Federalism in the Law of Labor Relations, 67 Harv. L. Rev. 1297, 1315 esc. 76 (1954). Hay que destacar, sin embargo, que la doctrina de desplazamiento elaborada por el Tribunal Supremo en este campo del Derecho no es un modelo de translucidez.
Al aprobar el NLRA, el Congreso no dispuso de guías claras y precisas que permitieran demarcar con precisión y claridad los linderos de acción permisible para el gobierno de los estados —que incluye al Estado Libre Asociado— frente al Gobierno federal. La ausencia de precisión sobre este particular ha dificultado la labor de los tribunales en su empeño de discernir cuál fue la intención del Congreso al plantearse si aplica o no la doctrina de desplazamiento. Motor Coach Employees v. Lockridge, 403 U.S. 274, 289 (1971).
*64 No empece, el Tribunal Supremo de Estados Unidos ha elaborado dos principales categorías de casos laborales, en los cuales ha dispuesto que el campo está ocupado. Las categorías son: Primero, aquellos casos donde es evidente, o parece serlo, que las actividades que el estado pretende reglamentar están protegidas por la See. 7 del NLRA, 29 U.S.C.A. see. 157,(10) o cuando la actividad en cuestión está prohibida por la See. 8 del NLRA, 29 U.S.C.A. see. 158(a).(11) E.g., San Diego Unions v. Garmon, ante. Segundo, en situaciones en las que se entiende que la acción estatal puede incidir o confligir con la política laboral federal referente a la estructura misma del NLRA. E.g., Machinists v. Wisconsin Emp. Rel. Commn., 427 U.S. 132 (1976).
Precisa destacar que el análisis de desplazamiento se efectúa tomando en consideración el tipo de conducta involucrada y no la naturaleza del remedio solicitado. Lognshoremen’s v. Davis, 476 U.S. 380 (1986) (“As the Garmon line of cases direct, the pre-emption inquiry is whether the conduct at issue is arguably protected or prohibited by the NLRA. That much is clear”). Véase, también, Automobile Workers v. Russell, 356 U.S. 634 (1958).
El caso ante nuestra consideración se refiere a la primera de las categorías antes mencionadas, ya que se alega que el Hospital despidió a la señora Rodríguez por motivo de sus actividades sindicales. Esto implicaría, necesariamente, que el Hospital incurrió en una práctica prohibida por la citada See. 8 del NLRA. Procede entonces analizar lo *65 dispuesto sobre este particular en el caso seminal de San Diego Unions v. Garmon, ante, así como en su progenie.
D. En San Diego Unions v. Garmon, ante, un patrono instó una demanda contra la unión para recobrar los daños económicos que habría sufrido como resultado de unos piquetes pacíficos que condujo la unión frente a sus facilidades. El Tribunal Supremo revocó al Tribunal Supremo de California —quien había sostenido la concesión de daños— disponiendo que los tribunales del estado de California no tenían jurisdicción. Según la regla elaborada en Garmon, si la actividad o conducta impugnada está cobijada o prohibida, o razonablemente puede estarlo por las Sees. 7 u 8 del NLRA, ante, según sea el caso, la acción estatal queda desplazada.
El Tribunal Supremo definió el estándar de desplazamiento aplicable bajo los términos siguientes:
When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by sec. 7 of the National Labor Relations Act, or constitute an unfair labor practice under sec. 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is subject of national regulation would create potential frustration of national purposes. San Diego Unions v. Garmon, ante, pág. 244.
El propósito de la norma enunciada en San Diego Unions v. Garmon, ante, ha sido descrito bajo los términos siguientes: “The Garmon rule is therefore intended to preclude state interference with the NLRB’s interpretation and enforcement of the integrated scheme of regulation establish by the NLRA.” Chaulk Serv., Inc. v. Mass. Com’n Against, 70 F.3d 1361, 1364 (1er Cir. 1995).
*66 El Tribunal reconoció, sin embargo, dos excepciones a la regla de desplazamiento que enunció, a saber: cuando la actividad regulada es meramente de la periferia o marginal a la ley federal, o cuando la conducta reglamentada involucra intereses y responsabilidades profundamente enraizadas en áreas de alto interés para los gobiernos de los estados, y que en ausencia de una clara indicación congresional en contrario, no cabe una interpretación de que el Congreso tuvo la intención de privar al estado de su facultad para legislar o reglamentar la actividad en cuestión. San Diego Unions v. Garmon, ante, pág. 779. Son estas excepciones las que han ido matizando la regla de Garmon, no necesariamente con entera claridad o de forma armoniosa y coherente.(12)
Debemos destacar, en cuanto a la segunda excepción mencionada, que San Diego Unions v. Garmon, ante, enfatizó que la decisión tomada en United Workers v. Laburnum Corp., ante, debe limitarse a sus propios hechos. En Laburnum, principal fundamento invocado por el recurrido, así como por la opinión disidente, el Tribunal Supremo resolvió que no aplicaba la norma del campo ocupado en un caso de daños y perjuicios instado por un contratista contra una unión para reclamar por los daños sufridos por él, como por sus empleados, como resultado de los actos de intimidación y violencia que fueron objeto por parte de la unión. El Tribunal hizo claro que su decisión se amparaba en la naturaleza de la conducta involucrada, a saber: la intimidación y los actos de violencia. A tales efectos, en Garmon se indicó: “that decision was determined, *67 as is demonstrated by the question to which review was restricted, by the ‘type of conduct’ involved, i.e., ‘intimidation and threats of violence’.” Garmon, ante, págs. 247-248. En igual sentido, véase Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 477 (1955). Por lo tanto, la norma sentada en “Laburnum” sólo se extiende a situaciones en que se reclame por actos de violencia e intimidación. Esto no ocurre en el caso ante nosotros.
De otra parte, en Linn v. United Plant Guard Workers, 383 U.S. 53 (1966), el Tribunal resolvió que la doctrina de desplazamiento no impedía que un oficial de una compañía instara una acción de libelo, según las leyes del estado de Michigan contra la unión, por motivo de unas expresiones libelosas hechas por esta última contra su persona durante la campaña para organizar el gremio laboral. Al resolver, el Tribunal sostuvo: “it appears that the exercise of state jurisdiction here would be a ‘merely peripheral concern of the Labor Management Relations Act,’ provided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false.” íd., pág. 61.
El Tribunal no elaboró mucho más sobre lo que debía considerarse una acción meramente marginal (merely peripheral). Pero al resolver, ponderó los factores siguientes: primero, que la reclamación que subyacía el reclamo de Linn no era una conducta protegida por el NLRA; segundo, que existía un interés apremiante del estado de proteger a sus ciudadanos de la conducta intencional y maliciosa imputada, y tercero, que la acción instada en el tribunal del estado no habría de interferir con la política laboral federal. En última instancia, el Tribunal sopesó los intereses involucrados, concluyendo que la acción del estado no interfería con las prerrogativas de la Junta Nacional de adjudicar las controversias bajo el NLRA, y no existía peligro alguno que el estado fuera a validar una conducta prohibida por la legislación federal. Véase Belk *68 nap, Inc. v. Hale, ante, págs. 498-499. Analizados en conjunto estos factores, concluyó que no aplicaba la doctrina del campo ocupado en dicho caso.
En Farmer v. Carpenters, 430 U.S. 290 (1977), el Tribunal Supremo sostuvo que un miembro de una unión que alegaba que ésta había promovido una campaña de descrédito y abuso en su contra podía instar contra ésta una demanda en daños por angustias mentales.
El Tribunal Supremo resolvió que no aplicaba la doctrina de desplazamiento, porque la reclamación por daños en ese caso no se relacionaba con un reclamo de discrimen laboral también presentado por el demandante, por lo que la demanda en daños no habría de incidir sobre la política laboral federal en cuanto al asunto de discrimen sindical. En tal sentido indicó lo siguiente, y citamos in extenso:
Recovery for the tort of emotional distress under California law requires proof that the defendant intentionally engaged in outrageous conduct causing the plaintiff to sustain mental distress .... The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee .... To the contrary, the tort action can be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context.
... Union discrimination in employment opportunities cannot itself form the underlying ‘outrageous’ conduct on which the state-court tort action is based; to hold otherwise would undermine the pre-emption principle .... Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself. (Énfasis suplido y citas omitidas.) Farmer v. Carpenters, ante, págs. 304-305.
Posteriormente, en Sears, Roebuck & Co. v. Carpenters, ante, el Tribunal Supremo refinó el análisis de San Diego Unions v. Garmon, ante, y aclaró que cuando se alega que no procede la doctrina del campo ocupado, porque el asunto regulado por el estado se refiere a un tema de alto interés *69 para éste, es imprescindible que la controversia que se dilucide en el foro estatal sea diferente a la que se pueda presentar o se haya presentado ante la Junta Nacional. El Tribunal indicó específicamente lo siguiente:
The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in Garner) or different from (as in Farmer) that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court’s exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the “Garmon” doctrine was designed to avoid. (Enfasis nuestro.) Sears Roebuck & Co. v. Carpenters, ante, pág. 196.
Establecido el marco jurídico aplicable sobre la doctrina de desplazamiento en el campo del derecho laboral, pasemos a repasar someramente la jurisprudencia de este Tribunal, la cual invoca a su favor la parte recurrida.
III
En Santini Rivera v. Serv. Air, Inc., ante, reconocimos que los parientes de un empleado que haya sido víctima de trato discriminatorio por su patrono, en violación de la Ley Núm. 100, ante, tienen una causa de acción propia al amparo del Art. 1802 del Código Civil, ante, por los daños que sufrieran “a consecuencia del referido discrimen laboral”. Santini Rivera, ante, pág. 11.
Para prevalecer en tal reclamo, los parientes deben pro-bar: (1) que han sufrido un daño moral compensable; (2) que el daño fue causado por la conducta discriminatoria del patrono hacia el empleado, quien tiene vínculos de parentesco, afecto o cariño de modo tal, que el impacto del trato discriminatorio sobre dicho empleado refluye sobre ellos y les causa perjuicio, y (3) que el acto del patrono fue culposo, conforme al concepto abarcadoramente amplio que *70 prevalece en nuestro ordenamiento sobre la responsabilidad civil extracontractual. Santini Rivera v. Serv. Air, Inc., ante. En su consecuencia, “una vez quede establecido el trato discriminatorio en cuestión”, procederá la compensación en daños. Id.
Posteriormente, en Maldonado v. Banco Central Corp., ante, pág. 276, construyendo sobre Santini Rivera v. Serv. Air, Inc., ante, indicamos que probados los tres elementos de la causa de acción por el Art. 1802, ante, “se compensarían los daños sufridos por el cónyuge como consecuencia del discrimen decretado en acción separada bajo la Ley Núm. 100, supra. Esta acción es contingente ya que si el empleado no prevalece, su consorte no puede reclamar por un discrimen no probado”. (Enfasis nuestro y en el original.)
En Dorante v. Wrangler of RR., ante, utilizando igual razonamiento, reconocimos una causa de acción por el Art. 1802, ante, al cónyuge de un empleado que alegó haber sido víctima de represalia en violación a la Sec. 21 de la Ley Núm. 96, ante. Establecido el acto de represalia, es decir, la violación a la Ley Núm. 96, ante, el cónyuge tendría derecho a recuperar por sus daños.
Resaltamos lo ya dicho, en cuanto a que en estas situaciones la reclamación según el Art. 1802, ante, es contingente a que se determine el acto discriminatorio del patrono. Pasemos entonces a aplicar lo discutido a los hechos del caso.
IV
Como señalamos inicialmente, el Hospital sostiene que la reclamación por daños y perjuicios de los recurridos está sujeta a que se establezca la conducta ilegal del patrono, es decir, que la señora Rodríguez fue despedida como resultado de sus actividades gremiales. Por tal razón, entiende que debe ser desestimado el litigio, ya que el tribunal ca *71 rece de jurisdicción para considerar los méritos del alegado discrimen sindical, por ser éste un asunto de la exclusiva competencia de la Junta Nacional en virtud de lo dispuesto en el NLRA.
A poco que revisemos el expediente del caso, según consta ante nosotros, no hay duda de que la razón de pedir de los demandantes recurridos es el alegado acto discriminatorio a que fue sometida la señora Rodríguez. Sobre este particular resulta ilustrador el siguiente diálogo acaecido durante la deposición del señor Díaz Arroyo, esposo de la señora Rodríguez:
P. Usted en su demanda, usted y sus hijos están demandando al Hospital Susoni por los daños sufridos a raíz del despido de su esposa.
R. Correcto.
P. ¿ Usted entiende que fue un despido discriminatorio?
R. Entendemos que sí.
P. ¿ Por qué usted entiende eso?
R. Entendemos que el despido fue motivado como resultado de la intención de mi esposa de pertenecer a un movimiento sindical y que Hospital Susoni en un intento de desarticular ese movimiento comenzó a intentar remover personal y hacer otro tipo de acciones, no, que son de nuestro conocimiento y entonces ella pues, fue despedida.
P. Su demanda se circunscribe al despido alegadamente discriminatorio de su esposa, ¿correcto?
R. Es correcto.
P. Y el discrimen usted indica que se debe a las actividades sindicales en las cuales ella participaba, ¿correcto?
R. Eso es correcto.
P. Con relación a la Unidad Laboral de Enfermeras y Empleados de la salud, ¿eso es correcto?
R. Correcto.
P. O sea, que ella fue discriminada básicamente por sus actividades sindicales según usted entiende.
R. Sí, en cierto modo.
P. Usted alega que sufrió, usted y sus hijos, daños por angustias y sufrimientos mentales, daños emocionales y morales, pérdida del gozo, etc. Yo le pregunto al momento del despido de su esposa, ¿usted entendía en ese mismo momento que se debía a un discrimen por razón de sus actividades sindicales? *72 R. Sí. (Énfasis nuestro.) Toma de deposición del señor Díaz Arroyo, págs. 251-252.
Es evidente entonces que la razón de pedir de los demandantes, o conducta subyacente a su reclamo, es la alegada violación a la See. 8 del NLRA por parte del patrono.(13) Por lo tanto, para prevalecer en la demanda instada el tribunal está obligado a hacer una determinación en el sentido que la señora Rodríguez fue objeto de discrimen por sus actividades gremiales.
Sin embargo, como habíamos indicado, cuando se reclama por una conducta que está prohibida por la See. 8 del NLRA, ante, la jurisprudencia del Tribunal Supremo ha determinado que los tribunales de los estados, y así lo hemos reconocido respecto del Estado Libre Asociado, no tienen jurisdicción para atenderla. Esta prohibición obedece, según expresa el propio Tribunal Supremo federal: “to allow the States to control conduct which is subject of national regulation would create potential frustration of national purposes.” San Diego Unions v. Garmon, ante, pág. 246.
Cabe recordar que en estos casos el análisis se centra en la conducta involucrada y no en el remedio solicitado. San Diego Unions v. Garmon, ante, pág. 780 (“It is not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdiction”). En este caso, los demandantes solicitan compensación por el discrimen sindical en que, alegadamente, el Hospital Susoni incurrió al destituir a la señora Rodríguez de su empleo. Si hubo o no hubo discrimen sindical es un asunto de la esencia misma de la función *73 que el Congreso le encomendó, con carácter de exclusividad, a la Junta Nacional. Adviértase, además, que conforme se desprende de la aplicación de Farmer v. Carpenters, ante, a este caso, la conducta culposa no puede ser el discrimen sindical mismo.
Puntualizamos lo siguiente, en este caso se presentó ante la Junta Nacional una querella por discrimen sindical. Sobre este asunto la Junta no se expresó al aprobar la transacción suscrita por las partes, en la cual como se indicó, no hubo admisión alguna de práctica ilícita por parte del patrono. Debemos suponer que avalar la transacción, según esos términos, recoge el criterio de la Junta Nacional de que de esta forma se adelanta o promueve la política laboral federal prevaleciente. Permitir entonces que se dilucide nuevamente, ahora ante los tribunales del Estado Libre Asociado, el asunto sobre el alegado discrimen laboral, necesariamente conlleva el potencial de interferencia con la política laboral establecida por la Junta Nacional; esto, ya bien porque el tribunal podría emitir una determinación que resultara ncompatible con esa política laboral, o porque la Junta Nacional hubiese determinado que en este caso lo más idóneo era promover la transacción sin ulterior determinación de responsabilidad. Este potencial de interferencia es precisamente lo que pretende evitar la doctrina del campo ocupado en el área laboral.
No hay duda de que el Estado Libre Asociado tiene un claro y legítimo interés en resarcir a los familiares de un empleado que ha sido sujeto de discrimen en su empleo. Ello, sin embargo, no es suficiente en este caso para sobrepasar el escollo que representa la doctrina de desplazamiento en el campo del derecho laboral. La estrecha simetría que existe entre la conducta discriminatoria sobre la cual tendrá que pasar juicio el foro de instancia y la conducta involucrada en la reclamación instada ante la Junta Nacional, nos obliga forzosamente a concluir que, tratándose de una conducta prohibida por la See. 8 del NLRA, el *74 tribunal de instancia no tenía jurisdicción sobre la materia en este caso, por lo cual debió desestimar la demanda instada.
Debe quedar meridianamente claro que nuestra decisión se circunscribe a los hechos específicos de este caso, donde se reclamó solamente por los daños que el discrimen sindical le causó a los familiares de la señora Rodríguez y donde se había presentado previamente una reclamación ante la Junta Nacional, que concluyó sin determinación alguna de responsabilidad patronal. No estamos frente a un reclamo de que la conducta del patrono para con su empleada fue humillante, vejatoria y claramente abusiva, y los parientes de ésta reclamen resarcimiento por los daños que pudo suponer ese proceder. Como se indicó en Farmer v. Carpenters, ante, pág. 305, “[s]imply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened”. (Énfasis nuestro.) No siendo éste el caso, debemos concluir que el Tribunal de Primera Instancia no tenía jurisdicción en este caso.
Finalmente, debemos apuntar que con anterioridad nos habíamos enfrentado a una controversia muy similar a la de autos en Rivera v. Security Nat. Life Ins. Co., ante. Allí resolvimos que un empleado despedido por motivo de sus actividades sindicales, en violación de las Sees. 7 y 8 del NLRA, sólo tenía derecho al remedio que le concedía la referida ley y nos negamos a atender su demanda por daños y perjuicios por motivo del discrimen del que fue objeto. Cabe señalar que en dicho caso los familiares del empleado también habían demandado junto a éste al patrono. No nos expresamos, sin embargo, sobre la reclamación de éstos, aun cuando la desestimamos.
Somos del criterio de que a la luz de los hechos presentados en este caso, el Tribunal de Primera Instancia no tenía jurisdicción para atender en la demanda instada de *75 acuerdo con el Art. 1802, ante, por los parientes de la señora Rodríguez por el alegado discrimen sindical de que alega fue objeto.
V
Por los fundamentos antes expuestos, estoy conforme con la Sentencia dictada que desestima el litigio.

 Parte del acuerdo transaccional al que llegaron las partes ante la Junta Nacional de Relaciones del Trabajo (Junta Nacional) consistió en la reinstalación de la empleada, señora Rodríguez, y la suma de $22,000 en concepto de haberes dejados de recibir.

 Apéndice, Solicitud de certiorari, pág. 21.

 El asunto de la alegada prescripción de la demanda instada no es objeto de revisión en este recurso, por lo que no hay necesidad de expresamos sobre éste.

 Véase Apéndice, Solicitud de certiorari, pág. 127.

 íd., pág. 129.

 íd.

 íd.

 El Labor Management Relations Act, 1947 (LMRA), 29 U.S.C.A. sec. 141(b), en lo pertinente, dispone:
“It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relation with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce.”

 Específicamente, el Art. 10(a) del National Labor Relations Act (NLRA), 29 U.S.C.A. sec. 160(a), dispone, en lo pertinente, lo siguiente:
“The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith.”

 La See. 7 del NLRA, 29 U.S.C.A. see. 157, dispone, en lo pertinente: “Employees shall have the right to self organization, to, form, join, or assist labor organizations, to bargain collectively through representations of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining ....”

 La Sec. 8(a) del NLRA, 29 U.S.C.A. sec. 158(a), dispone, en lo pertinente:
“It shall be an unfair labor practice of the employer:
“(1) to interfere with restrain, or coerce employees in the exercise of the rights guaranteed in section 157 ....
“(2) to dominate or interfere with the formation or administration of any labor organization ....”

 Tan es así, que la crítica en la doctrina sobre las excepciones no tan sólo abunda, sino que ha sido particularmente punzante. Véanse, entre otros: E. Silverstein, Against Preemption in Labor Law, 24 Conn. L. Rev. 1,17 (1991) (“the exceptions are seen as swallowing the rule”); D.L. Gregory, The Labor Preemption Doctrine: Hamiltonian Renaissance or Last Hurrah?, 27 Wm. & Mary L. Rev. 507, 509 esc. 8 (‘Volatile checkerboard of inconsistent decisions”). El profesor Archibald Cox describió la jurisprudencia sobre este tema según los términos siguientes: “[There is] little interest in logical consistency and less interest in building a coherent and continuing body of law.” A. Cox, Recent Development in Federal Labor Law Preemption, 41 Ohio St. L.J. 277, 300 esc. 8 (1980).

 Es menester resaltar que la doctrina de desplazamiento en el ámbito laboral impide que un tribunal de un estado o del Estado Libre Asociado atienda una conducta proscrita por el NLRA, independientemente de si la conducta violenta, a su vez, derechos constitucionales o alguna legislación laboral estatal. Es por ello, que diferimos del criterio en contrario expresado en la opinión disidente. Validar dicha posición supondría dejar sin efecto la larga trayectoria de desplazamiento en el campo laboral esbozada reiteradamente por el Tribunal Supremo de Estados Unidos y por esteTribunal.