EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Energía Eléctrica de Puerto Rico (AEE) <br><br> Recurrida <br><br> vs. <br><br> Unión de Trabajadores de La Industria Eléctrica y Riego (UTIER) <br><br> Peticionaria | Certiorari <br><br> 2007 TSPR 47 <br><br> 170 DPR \_\_\_\_ |

Número del Caso: CC-2004-668

Fecha: 14 de marzo de 2007

Tribunal de Apelaciones:

>       Región Judicial de San Juan Panel III

Juez Ponente:

>       Hon. Antonio J. Negroni Cintrón

Abogado de la Parte Peticionaria:

>       Lcdo. Alejandro Torres Rivera

Abogados de la Parte Recurrida:

>       Lcda. Marilyn M. Rivera Meléndez
>       Lcdo. Juan R. Ortiz Ramírez

Materia: Impugnación de Laudo Obrero-Patronal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Energía
Eléctrica de Puerto Rico
(AEE)

    Recurrida

        vs.                       CC-2004-668     Certiorari

Unión de Trabajadores de
la Industria Eléctrica y
Riego (UTIER)

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 14 de marzo de 2007.

Tenemos la oportunidad de dilucidar si una controversia sobre una alegada invasión de unidad apropiada es de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo de Puerto Rico.

I

La Unión de Trabajadores de la Industria Eléctrica y Riego (en adelante, UTIER) es la representante exclusiva de todos los trabajadores que emplea la Autoridad de Energía Eléctrica (en adelante, AEE o la Autoridad) para la operación y conservación de los sistemas eléctricos y de riego y de los empleados de la División de Ingeniería.

Según el convenio colectivo que regía las relaciones entre las partes al momento que nos atañe:

> el término "Operación y Conservación" comprende toda labor que realiza la Autoridad de reparación, renovación y mejoras para mantener la propiedad en buenas y eficientes condiciones de operación. Quedan excluidos del término "Operación y Conservación" las labores que se realicen en proyectos de construcción de obras nuevas, así como las mejoras extraordinarias a la propiedad. Art. III, sec. 3 del Convenio Colectivo entre la Autoridad de Energía Eléctrica de Puerto Rico y la Unión de Trabajadores de la Industria Eléctrica y de Riego de Puerto Rico (Independiente) (duración 16 de mayo de 1992 al 16 de mayo de 1998) (en adelante, Convenio Colectivo entre la Autoridad y la UTIER).

Durante el año 1997 surgieron diferencias entre la Autoridad y la UTIER sobre si determinadas labores que se estaban realizando en la planta generatriz de Aguirre de la AEE constituían reparaciones de mantenimiento ordinarias o extraordinarias. La UTIER cuestionó la subcontratación de los trabajos referidos y alegó que éstos le correspondían a la unidad apropiada que la unión representa. La Autoridad, por su parte, adujo que las labores en cuestión constituían mejoras extraordinarias y que, por tanto, caían fuera de lo que le correspondía a la unidad apropiada representada por la UTIER. Entre las partes hubo distintas comunicaciones y reuniones con miras a resolver la controversia, sin que lograran llegar a acuerdo alguno.

Ante esta situación, la UTIER presentó una querella y solicitud para la designación de un árbitro ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo. En ésta alegó que los "trabajos de operación de la

grúa principal pertenecen a la unidad apropiada UTIER" y que no le fueron notificados según requería el convenio colectivo. La UTIER fundamentó su reclamación en el artículo sexto del convenio colectivo, sobre subcontratación. La Autoridad presentó una moción de desestimación por falta de arbitrabilidad sustantiva y procesal el 30 de abril de 2002.

Luego de que las partes acordaran someter la cuestión jurisdiccional vía memorandos de derecho, la árbitro Brunilda Domínguez González, mediante un laudo de arbitraje del 23 de septiembre de 2003, se declaró sin jurisdicción, por entender que la querella no era arbitrable sustantivamente. Ello, según su juicio, por dos razones independientes: primero, porque no había identidad entre lo discutido en la etapa pre-arbitral y la querella presentada, ya que las comunicaciones y los pasos pre-arbitrales habían girado en torno al tema de las mejoras extraordinarias, no al tema de la subcontratación; y, segundo, porque las partes habían excluido las mejoras extraordinarias de la unidad apropiada y dicho asunto era de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo, tanto en virtud del convenio colectivo como del derecho aplicable.[1]

---

[1] La árbitro sustentó su decisión a base de la sección sexta del tercer artículo del convenio, que establecía lo siguiente:

> En vista de que la legislación y la doctrina vigente establecen que la Junta de Relaciones del Trabajo de Puerto Rico tiene jurisdicción original y exclusiva en controversias relacionadas con la unidad apropiada, las partes acuerdan dejar en suspenso el procedimiento administrativo que con este propósito existía en las Secciones 3 y 6 de este Artículo.

Inconforme con la decisión de la árbitro, la UTIER impugnó el mencionado laudo ante el Tribunal de Primera Instancia, Sala Superior de San Juan. En una sentencia del 21 de enero de 2003, el foro de instancia desestimó el recurso de impugnación y avaló la conclusión de la árbitro en cuanto a que la discusión en las etapas pre-arbitrales se había concentrado en las mejoras extraordinarias, tema excluido de la jurisdicción arbitral.

La UTIER recurrió de esta decisión ante el Tribunal de Apelaciones. El foro apelativo, mediante una resolución del 28 de mayo de 2004, expresó su preocupación por las supuestas posibles implicaciones del dictamen arbitral. Aludió a que del hecho de que en la discusión no hubiese surgido el término "subcontratación" con tanta frecuencia como el término "mejoras extraordinarias" se dedujese que las etapas pre-arbitrales no giraron en torno a la subcontratación. El tribunal apelativo opinó que tal conjetura suponía "desatender el alcance lógico de la controversia". Sin embargo, el Tribunal de Apelaciones confirmó la sentencia del foro de instancia, por entender que en tanto la controversia entre las partes versaba sobre la catalogación de los trabajos realizados como ordinarios o

---

Se acuerda, además, que si en el futuro variara la legislación y/o doctrina vigente a los efectos de que la jurisdicción exclusiva que tiene la Junta de Relaciones del Trabajo pueda ser compartida con otros organismos administrativos, se incorporará al convenio el procedimiento dejado en suspenso y otro similar a tono con la legislación o doctrina vigente. Art. III sec. 6 del Convenio Colectivo entre la Autoridad y la UTIER, *supra*.

extraordinarios, ésta giraba necesariamente sobre si los trabajos en cuestión pertenecían a la unidad apropiada. El foro apelativo manejó la situación como si se tratara de una clarificación de unidad apropiada y resolvió que este tipo de controversia era de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo.

El 23 de julio de 2004 la UTIER presentó un recurso de *certiorari* ante nosotros, en el cual planteó los siguientes señalamientos de error:

Primer Error:

Erró el Honorable Tribunal de Apelaciones al sostener que la controversia ante la consideración de la Honorable Árbitro, por tratarse de una controversia sobre "mejoras extraordinarias" era una controversia sobre la unidad apropiada sobre la cual la Árbitro estaba impedida de intervenir y asumir jurisdicción, por tratarse de una controversia de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo de Puerto Rico, independientemente se tratara de una controversia en la cual fuera necesaria la clarificación de puestos o no.

Segundo Error:

Erró el Honorable Tribunal de Apelaciones al violar la norma establecida por la Junta de Relaciones del Trabajo de Puerto Rico de deferir al foro arbitral controversias sobre unidad apropiada donde el asunto en controversia sea la violación del convenio colectivo y donde no esté presente la clarificación de los puestos de la unidad apropiada.

Tercer Error:

Erró el Honorable Tribunal de Apelaciones al violar el debido procedimiento de ley de la parte Recurrente al privarle del derecho a una vista evidenciaria y resolver que había habido una renuncia a la misma de parte de la Recurrente.

Expedimos el recurso el 3 de diciembre de 2004, las partes comparecieron a sustentar sus posturas y el caso quedó sometido el 30 de marzo de 2005. Pasamos a resolver.

II

La Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 del 8 de mayo de 1945, 29 L.P.R.A. sec. 61 *et seq.* (en adelante la Ley), establece la política pública del gobierno de Puerto Rico en cuanto a las relaciones obrero-patronales y la celebración de convenios colectivos. Así, la Ley referida resalta la consecución de la "[p]az industrial, salarios adecuados y seguros para los empleados, así como la producción ininterrumpida de artículos y servicios, a través de la negociación colectiva" como su finalidad principal. 29 L.P.R.A. sec. 62(2). Instituye, además, a la Junta de Relaciones del Trabajo de Puerto Rico como el organismo capacitado para velar por su cumplimiento. 29 L.P.R.A. secs. 64 – 64a.

Con miras a asegurar una negociación colectiva efectiva, la Ley faculta a la Junta de Relaciones del Trabajo a determinar y certificar la unidad apropiada para la negociación colectiva. 29 L.P.R.A. sec. 66(2). La unidad apropiada es el conjunto de empleos o puestos de características e intereses similares, agrupados para la negociación colectiva de términos y condiciones de empleo o

para elegir al representante a tales efectos.[2] Anteriormente ya habíamos reconocido que en casos ordinarios de representación la determinación de una unidad apropiada es una cuestión de la exclusiva jurisdicción de la Junta de Relaciones del Trabajo. A.A.A. v. Unión Abo. A.A.A., 158 D.P.R. 273, 281 (2002); U.P.R. v. Asoc. Pur. Profs. Universitarios, 136 D.P.R. 335, 345 (1994); Pérez Maldonado v. J.R.T., 132 D.P.R. 972, 979 (1993); J.R.T. v. A.M.A., 119 D.P.R. 94, 99 (1987); F.S.E. v. J.R.T., 111 D.P.R. 505, 514 (1981).

La Ley le concede a la Junta amplia discreción para determinar qué es lo que constituye una unidad apropiada para negociar. Entre los factores que la Junta toma en consideración se encuentran: (1) el estímulo de negociación colectiva; (2) la historia de la negociación colectiva en el

---

[2] En vista del conocido origen de nuestra propia legislación, las siguientes expresiones son aplicables para significar qué es una "unidad apropiada":

(a) As an incident to conducting a representation election, the [National Labor Relations] Board must determine which group of jobs shall serve as the election constituency. That group of jobs is denoted the appropriate bargaining unit, and the persons employed in those jobs at the time of the election are entitled to vote whether they wish to continue to settle terms and conditions of employment on an individual basis – or, as some would have it, by "unilateral" act of the employer – or whether they wish to have one or another employee representative. A. Cox, D. Bok, R. Gorman, M. Finkin, *Labor Law*, Decimotercera edición, New York, Foundation Press, 2001, pág. 270.

(b) "Bargaining unit. A group of employees authorized to engage in collective bargaining on behalf of all the employees of a company or an industry sector". B.A. Garner (ed.), *Black's Law Dictionary*, Séptima edición, St. Paul, Minn., West Group, 2000, pág. 116.

negocio específico y en la industria en su totalidad; (3) la integración de los procesos del trabajo y de la administración; (4) las habilidades de los empleados envueltos; y (5) los deseos de los empleados. De ordinario, la determinación de la Junta sobre cuál es la unidad apropiada para negociar es concluyente, a no ser que tal decisión sea arbitraria o caprichosa. Rivera v. Junta Relaciones del Trabajo, 70 D.P.R. 5, 12 (1949).

En Pérez Maldonado v. J.R.T., *supra*, abordamos el procedimiento de *clarificación* de la unidad apropiada para la negociación colectiva. Debido a que nuestra Ley no reconoce ni trata el problema que surge cuando se desea "añadir a una unidad apropiada determinados [puestos] que al momento de la petición no forman parte de ésta, pero que propiamente deb[e]n pertenecer a la misma porque comparten una misma comunidad de intereses", Pérez Maldonado v. J.R.T., *supra*, pág. 982, recurrimos a la práctica de la propia Junta de Relaciones del Trabajo y a aquélla de la jurisdicción federal. De esta forma, validamos el procedimiento de clarificación y precisamos el tipo de situación para el cual está disponible.

> Se trata principalmente de situaciones: (1) donde un patrono expande sus operaciones y abre nuevos empleos en su establecimiento, que son esencialmente similares o parecidos a los que ya estaban incluidos en la unidad apropiada; (2) donde un patrono establece una nueva sucursal de la empresa en la cual hay empleos idénticos a los incluidos en la unidad apropiada; (3) donde unos empleos que antes estaban excluidos de la unidad apropiada han evolucionado sustancialmente con el tiempo adquiriendo características que los hacen muy similares o parecidos a los que componen la unidad; (4) donde una empresa que tenía una unidad

apropiada adquiere o se une a otra dedicada al mismo tipo de negocio que tenía su propia unidad pero que desapareció con la fusión; [...] (5)donde un patrono no le había informado a la unión sobre la existencia de una categoría específica de empleos, por lo que no se incluyó en la definición de la unidad contratante. Pérez Maldonado v. J.R.T., *supra*, págs. 982-3.

Aunque en aquel momento no lo dijimos expresamente, como resultado de nuestra decisión en Pérez Maldonado v. J.R.T., *supra*, la Junta de Relaciones del Trabajo se ha mantenido como el organismo con jurisdicción exclusiva para dictámenes sobre la clarificación de unidad apropiada. Justamente, el Negociado de Conciliación y Arbitraje del Departamento del Trabajo se ha mantenido fuera de este tipo de controversias en virtud de su propio reglamento, el cual dispone que "[e]l servicio de arbitraje se ofrecerá para resolver controversias reales, no hipotéticas. Este servicio no se ofrecerá para resolver controversias que envuelvan la clarificación o determinación de unidades de negociación colectiva". Reglamento Para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico, Núm. 2948, 21 de enero de 1983. Tiene sentido que así sea, pues la clarificación conlleva un análisis virtualmente idéntico al de la determinación de unidad apropiada. Es decir, en ambos casos hay que entrar a dilucidar qué puestos deben configurar la unidad apropiada tomando en cuenta los mismos factores sobre intereses y características laborales señalados antes.

Es pertinente destacar que la unidad apropiada no se compone de los empleados como tal, sino de los puestos que éstos ocupan. A. Cox, D. Bok, R. Gorman, M. Finkin, *Labor Law*, Decimotercera edición, New York, Foundation Press, 2001, pág. 271. Sin embargo, es como resultado de una determinación o clarificación de unidad apropiada que a los empleados incluidos en la unidad se les reconocen todos los derechos que emanan de la Ley y de el convenio colectivo. J.R.T. v. A.M.A., *supra*, págs. 100-1. De ahí la importancia de que la unidad apropiada esté definida de forma precisa y que las labores asignadas a cada una de las plazas que la componen sean respetadas.

Ocurre una invasión a la unidad apropiada cuando se asignan trabajos de la unidad fuera de ésta. Ello sucede específicamente cuando un empleado no unionado realiza funciones correspondientes a un miembro de la unidad contratante. La investigación sobre si ha ocurrido la invasión referida no va dirigida a la determinación de qué plazas están o no contenidas en la unidad apropiada. Por este motivo, la Junta de Relaciones del Trabajo y el Negociado de Conciliación y Arbitraje del Departamento del Trabajo, conscientes de que en una investigación sobre una presunta invasión de la unidad apropiada no se entra a deliberar la conveniencia de que ciertas plazas sean parte de la misma (es decir, no se discute la composición de la unidad apropiada), consistentemente han mantenido que la jurisdicción exclusiva de la Junta es solamente en cuanto a los procesos de certificación o clarificación de unidad

apropiada. Cuestiones relativas a una posible invasión de la unidad apropiada son resueltas por el Negociado de Conciliación y Arbitraje. *Ver, e.g.*: En el caso de: Autoridad de Energía Eléctrica y Unión de Trabajadores de la Industria Eléctrica y de Riego, Caso CA-99-23 (Resolución de la Junta de Relaciones del Trabajo de Puerto Rico del 18 de mayo de 2000); En el caso de: Unión de Trabajadores Independientes de la Autoridad de Energía y Riego y Unión de Trabajadores de la Industria Eléctrica y Riego, Casos Núms. A-05-2428 y A-44-99 (Negociado de Conciliación y Arbitraje, 28 de abril de 2005); En el caso de: Autoridad de Energía Eléctrica y Unión de Trabajadores de la Industria Eléctrica y Riego, Caso Núm. A-00-1606 (Negociado de Conciliación y Arbitraje, agosto de 2005). De esta forma, el Negociado de Conciliación y Arbitraje, mediante una resolución de su Director a tales efectos, ha apuntado que **la Junta de Relaciones del Trabajo no intervendrá en controversias sobre unidades apropiadas si "no están relacionadas con o involucran la <u>clarificación de los puestos</u> de la unidad apropiada. Esto es[,] que cuando sea una cuestión de invasión de unidad apropiada, el foro a dirimir la controversia es el acordado mediante 'quejas y agravios'"**. En el caso de: Autoridad de Energía Eléctrica de Puerto Rico y Unión de Trabajadores de la Industria Eléctrica y Riego, Caso: Varios (Resolución del Director del Negociado de Conciliación y Arbitraje del 21 de mayo de 2003)(énfasis en el original y añadido).

En la jurisdicción federal se ha seguido un patrón similar al relatado antes. Allí, aunque el National Labor Relations Board tiene jurisdicción exclusiva para certificar o clarificar la unidad apropiada para la negociación colectiva, las controversias sobre la asignación de tareas fuera de la unidad apropiada son materia de arbitraje. En Carey v. Westinghouse Electric Corporation, 375 U.S. 261 (1964), el Tribunal Supremo de Estados Unidos, aunque reconoció la dificultad para distinguir casos de representación y certificación de unidad apropiada de casos de asignación de tareas fuera de ésta, recomendó valerse de los procedimientos voluntarios de resolución de disputas, en especial el arbitraje, para las disputas sobre asignación de labores. Carey v. Westinghouse Electric Corporation, *supra*, págs. 261-8. En un caso sobre asignación de tareas de la unidad apropiada a empleados fuera de ésta, la Corte de Apelaciones de Estados Unidos para el Segundo Circuito advirtió que para analizar si las tareas asignadas correspondían o no a la unidad apropiada, el "árbitro no necesita definir la unidad ni alterar su alcance". Carey v. General Electric Company, 315 F.2d 499, 510 (1963).[3]

---

[3] It is true that only the Board can conclusively define the scope of the bargaining unit, just as the Board is the authority for the definition of unfair labor practices. But an arbitrator, in determining whether a party has violated the collective bargaining agreement, does not define an unfair labor practice; nor need he necessarily, in construing the employer's contractual obligation to recognize the union as the bargaining agent in the unit delineated by the Board, define that unit or alter its scope. The grievances under examination, and the contract provisions which will have to be interpreted in the course of arbitration, are quite familiar in the context of work-

Al igual que lo que hicimos en Pérez Maldonado v. J.R.T., *supra*, aquí la constante práctica de la Junta de Relaciones del Trabajo y del Negociado de Conciliación y Arbitraje del Departamento del Trabajo, añadidas a la normativa en la jurisdicción federal, nos mueven a adoptarlas como vinculantes en nuestra jurisdicción. **Resolvemos, por tanto, que las cuestiones relativas a la invasión de la unidad apropiada para la negociación colectiva caen dentro de la jurisdicción amplia de los árbitros, pues no inciden sobre la composición como tal de la unidad apropiada, que es materia de la autoridad exclusiva de la Junta de Relaciones del Trabajo.**

Nos cercioramos de esta forma que se adelante la política pública gubernamental de promover la paz industrial y la producción ininterrumpida de servicios. 29 L.P.R.A. sec. 62(2). Además, al así resolver preservamos nuestra propia política de promover el uso del arbitraje como la culminación del proceso de negociación colectiva y mantenemos su importancia dentro de las relaciones obrero-patronales. *Ver, e.g.,* F.S.E. v. J.R.T., *supra*, pág. 516.

III

El convenio colectivo vigente al momento de los hechos que nos conciernen establecía, en su artículo cuarto, todo lo relativo a la subcontratación de labores.

_____

assignment disputes. Carey v. General Electric Company, 315 F.2d 499, 510 (1963).

Específicamente, disponía que "la Autoridad no podrá subcontratar labores o tareas de operación y conservación de la Unidad Apropiada", excepto en ciertas circunstancias enumeradas en el propio artículo. Art. IV del Convenio Colectivo entre la Autoridad y la UTIER, *supra*. Además, el convenio colectivo claramente ordenaba que en caso de que surgiesen discrepancias en cuanto a la subcontratación de ciertas tareas se recurriría a la mediación de un tercero imparcial designado por el Secretario del Trabajo. *Id.* No hay duda, entonces, de que las controversias sobre subcontratación entre la Autoridad y la UTIER son arbitrables.

Sin embargo, e inclusive consciente de lo anterior, el Tribunal de Apelaciones dispuso en su resolución que el asunto en cuestión era de la exclusiva jurisdicción de la Junta de Relaciones del Trabajo. Estimó que como se trataba sobre la subcontratación de supuestas mejoras extraordinarias, su disposición necesariamente conllevaba definir qué tareas configuraban la unidad apropiada. El foro apelativo fundamentó su decisión en la sección sexta del tercer artículo del convenio colectivo, ya citada. Erró el foro apelativo al resolver como lo hizo.

En virtud de los términos claros del convenio colectivo entre las partes, las mejoras extraordinarias quedaban fuera de la unidad apropiada para la negociación. Precisamente por esta razón tenían que subcontratarse. Ello no obstante, el que la árbitro tuviese que determinar si cierta labor pudiera ser motivo de subcontratación y, de esta forma,

decidir si era o no una tarea asignada a la unidad apropiada no equivalía a adjudicar qué puestos la conformaban. Veamos el asunto por partes.

La determinación de qué plazas constituían la unidad apropiada tuvo que haber ocurrido, por definición, antes de la negociación del convenio colectivo que hoy consideramos. En todo caso, y en algunos supuestos ya enumerados, lo que procede luego de certificada la unidad apropiada sería un procedimiento de clarificación de ésta. Sin embargo, la indagación del juzgador en el caso que nos ocupa no es ni una cosa ni la otra, pues no versa en torno a intereses ni características de empleo. Al momento de examinar si cierta labor constituye una mejora extraordinaria que pueda subcontratarse, la árbitro sólo tenía que analizar las tareas **ya definidas** para la unidad apropiada. Ello no conlleva una clarificación, sino una interpretación del convenio colectivo, lo cual es materia de arbitraje.

Concluimos, por lo anterior, que en casos como el presente, en que se cuestiona una subcontratación por constituir alegadamente una invasión a las tareas de la unidad apropiada, la controversia no gira en torno a la composición ni clarificación de ésta. En consecuencia, se trata de un asunto de la entera jurisdicción del procedimiento de arbitraje. En cambio, aquellos casos que aparenten ser sobre subcontratación y mejoras extraordinarias, pero cuya finalidad esencial sea lograr una clarificación de los puestos que componen la unidad apropiada, la jurisdicción de la Junta de Relaciones del

Trabajo sí será exclusiva. Como corolario de lo anterior, **los árbitros no podrán desestimar sumariamente las querellas sobre mejoras extraordinarias. Tendrán que recibir prueba a los efectos de determinar si constituyen propiamente una controversia sobre invasión de unidad apropiada, o si son sobre clarificación de la misma. Una vez recibida la prueba, y de acuerdo con lo aquí resuelto, los árbitros decidirán si tienen o no jurisdicción para evaluar la controversia.**

Erró el Tribunal de Apelaciones al decidir que la controversia era de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo de Puerto Rico por el mero hecho de versar sobre mejoras extraordinarias.

IV

Por los fundamentos que anteceden, procede revocar la resolución del Tribunal de Apelaciones, Región Judicial de San Juan, y devolver la controversia ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico para que la atienda.

Se dictará sentencia de conformidad.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Energía
Eléctrica de Puerto Rico
(AEE)

    Recurrida

        vs.                                CC-2004-668     Certiorari

Unión de Trabajadores de
la Industria Eléctrica y
Riego (UTIER)

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 14 de marzo de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la resolución del Tribunal de Apelaciones, Región Judicial de San Juan, y se devuelve la controversia ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico para que la atienda.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

El Juez Presidente señor Hernández Denton disiente de la Opinión del Tribunal por entender que el Art. III del Convenio Colectivo de la Autoridad de Energía Eléctrica y la Unión de Trabajadores de la Industria Eléctrica y Riego expresamente excluye de su alcance "las mejoras extraordinarias a la propiedad". Según el Juez Presidente señor Hernández Denton, el árbitro correctamente concluyó que no tenía jurisdicción para adjudicar la querella presentada por la Unión. Por ende, confirmaría la Resolución del Tribunal de Apelaciones que se negó a revocar la decisión del árbitro.

El Juez Asociado señor Rivera Pérez disiente sin opinión.

                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo